JACKSON, *ex dem.* VAN DUSEN and others, *against*
VAN DUSEN.

Where the witnesses to a will were all dead, and one of them had signed the initials of his name, as his mark, and the testator had also signed his mark, and the handwriting of two of the witnesses were proved; and a witness, at the trial, in 1807, swore,that he had seen the other witness make his mark,

THIS was an action of *ejectment*, brought to recover the third part of a farm in the possession of the defendants, in the town of *Canaan*, in the county of *Columbia*.

The cause was tried at the *Columbia* circuit, in *October*, 1807, before Mr. Justice *Van Ness*.

At the trial, the plaintiff proved, that *Johannes Van Dusen*, the grandfather of the lessors, in his life-time, was seised of the premises in question, and also of an estate in *Kinderhook*, where he lived ; and that he died in 1757, leaving four sons, viz. *Robert, Lucas, Lawrence*

in the year 1760, to a paper in his possession, and that from a comparison of the two marks, and from the peculiar manner in which one of the initial letters was made, he believed the mark affixed to the will was made by the witness to it : this was held sufficient evidence of the execution of the will, to permit it to be read to the jury, when accompanied with evidence of a possession by the devisees under the will, and of the declarations of one of the other witnesses, in his life-time, as to the due attestation by all the witnesses. This is not proof by comparison of hands.

The acts and declarations of third persons in possession of lands, are admissible in evidence to prove a continued possession under an ancient will, so as to make out its formal execution.

The widow of a person deceased is a competent witness, in an action of ejectment brought to recover the possession of lands claimed under her husband, though she would be entitled to dower in the lands.

The sanity of a testator is presumed, until the contrary appears. The *onus probandi*, as to his mental incapacity, lies on the party who alleges the insanity. But if a mental derangement has been proved, it is then incumbent on the devisee to show a lucid interval, or the sanity of the testator, at the time of executing the will.

and *John*, and two daughters. The plaintiff then offered in evidence, the last will and testament of *Johannes Van Dusen;* and after proving that *Arent Van Dyck* and *Samuel Wheeler*, two of the witnesses, had been dead between 30 and 40 years, and that *William Claw*, the other witness, had been dead about two years, he offered to prove the execution of the will, by proof of the hand-writing of *Van Dyck* and *Claw*, two of the witnesses, and by proving that the *mark* of *Wheeler*, the other witness, affixed to the will as his mark, was similar to another mark which had been made by *Wheeler*, in the presence of the witness, in the year 1760, and then in his possession, at the trial. The counsel for the defendant objected to this testimony, but the objection was overruled by the judge.

NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DUSEN.

The plaintiff then proved the hand-writing of *Van Dyck* and *Claw;* and *Henry A. Van Dyck*, a witness, testified that he had seen *Wheeler*, the other witness to the will, make his mark, in 1760, and that he subscribed his name as a witness to such signature; and that from a comparison of the mark affixed to the said will, offered in evidence by the plaintiff, with the mark so made by *Wheeler* in 1760, he believed that *Wheeler* made the mark to the will; that there is a small difference between the W in the two marks, and that he judged only from the comparison of the two, and from the manner the S was made, it being inverted. (S)

The plaintiff also proved, that at the time of the death of *Johannes Van Dusen*, *Robert*, his eldest son, was married; that the three brothers, *Robert*, *Lawrence* and *John*, succeeded to the possession of the house occupied by the testator, in his life-time, and of the homestead, farm and mill; and a new mill was built by them, before the revolution, in the place where the old one stood. Until the marriage of *John*, which was in 1780 or 1781, *Robert* principally attended the mill, and *Lawrence* and

*John* worked on the farm. *Lawrence* married soon after the death of the testator, and lived until his death on the farm, but in a separate house, built after the death of the testator. *Lawrence* had, however, lived a short time at *New Lebanon*, on the premises in question. He died without issue. *John*, after his marriage, attended in turn with *Robert* at the mill; and after living about a year and a half with *Robert*, occupied an additional building to the house, where he remained until 1787, when he purchased a house and lot, at a short distance, where he resided until his death, and his children have lived there ever since.

The plaintiff then proved, (the evidence was objected to by the defendant's counsel, but the objection was overruled by the judge,) that in 1794, *Daniel Staats* purchased the mill of *John Van Dusen*, and *Catharine Van Dusen*, widow of *Robert Van Dusen*, *Stephen V. Lawrence*, *John A. Van Buren* and *Mary* his wife, and *Cynthia Van Dusen;* that *John Van Dusen*, at that time, claimed one-third of the mill, *Stephen* and *Lawrence* claimed one-third, under their uncle *Lawrence*, deceased, and *John A. Van Buren*, and his wife, and *Cynthia Van Dusen*, claimed the other third, under the will of *Robert Van Dusen*, deceased; that the said *John A. Van Buren*, in the presence of the other heirs of *Robert*, in answer to a question put to him respecting the mill, at that time, told the witness, that they held the mill under the will of *Johannes Van Dusen*, deceased, but the other heirs said nothing about the mill. The purchase-money was paid to them in the proportions above mentioned. At that time, the defendant lived on the premises in question, at *Canaan*, and was not consulted by *Staats*, about the title or the sale of the mill.

The defendant offered to prove by *Daniel Staats*, on his cross-examination, that in 1795, he, the witness, purchased from *John Van Dusen*, his claim to one-third of

the old homestead of the testator ; that he claimed the same of the children of *Robert Van Dusen,* but that they resisted that claim, in the presence of *John Van Dusen,* on the ground that the will under which he claimed, was invalid, and that *John Van Dusen,* thereupon repaid to the witness the money he had received, and rescinded the contract. This evidence was objected to by the plaintiff's counsel, and was rejected by the judge.

The plaintiff then produced in evidence a deed, dated the 14th *July,* 1794, from the parties above mentioned to *Daniel Staats* and *Adam I. Van Alen,* for the said mill, which was objected to, but the objection was overruled by the judge.

The plaintiff then called as a witness, *Elizabeth Van Dusen,* the widow of *John Van Dusen,* deceased, the father of the lessors. She was objected to as incompetent, but the objection was overruled by the judge. She testified that she married in 1781, and that her husband was 68 years old when he died, and her eldest child was 15 years old, her second 13 and her youngest 7 ; at which time, *Lawrence Van Dusen,* her brother-in-law, lived on the premises in question, but he, *Lawrence,* afterwards returned and continued at the old homestead, in a separate house, until his death. Before *John,* the husband of the witness, left the old homestead, to live in a house about half a mile distant, the brothers made a *parol* division of the land of their father, except the land in *Warwiguunc,* which was not divided, a part of it being in dispute between the proprietors and settlers, and *John* refused to take it for his share. In making the division, the land on the east side of the creek, was considered as one-third of the *Kinderhook* estate, and the land on the west side of the creek, as two-thirds, and was so divided ; *John* took the one-half of the land on the west side of the creek, but no division was made between *Robert* and *Lawrence.* *John* possessed the land

agreeably to this division, until he died, in *May*, 1797. While the brothers lived at the old homestead, the work was done in common, each taking a third of the produce. The witness said that she was not present all the time while this *parol* division was made, and her knowledge was derived chiefly from the information of her husband. She never heard of any dispute, at that time, about the will, and the land at *Warwiguunc* was always talked of as belonging to the three brothers. *Robert* died in *August*, 1790. In the conversation about the division, the defendant claimed no land at *Kinderhook*.

The plaintiff produced a release from *John A. Van Buren*, and *Mary* his wife, *Catharine Van Dusen*, *Stephen Van Dusen*, *Lawrence Van Dusen* and *Cynthia Van Dusen*, dated 18th *March*, 1797, to *John Van Dusen*, for the lands in his possession, which deed was objected to, but admitted by the judge.

The plaintiff then gave in evidence, a lease from *John Van Dusen*, to *Isaac Van Volkenburgh*, dated 22d *May*, 1798, for the house which *John* left at *Collies Crall*.

The plaintiff also offered in evidence, the last will and testament of *Johannes Van Dusen*, dated the 22d of *December*, 1757, which was objected to, but admitted by the judge ; and the same was read to the jury. By this will the testator devised all his real estate to his three sons, *Robert*, *Lawrence* and *John*, fifty pounds to his son *Lucas*, and his personal property to his two daughters. It was proved that the two daughters had the personal property of the testator, and *John* took a bible devised to him, by the said will. The counsel for the plaintiff admitted that the defendant was then in possession of the premises in question, and had been possessed thereof for 22 years.

It appeared that about 40 years ago, *Lucas* applied to *John* for a part of the lands in the town of *Canaan*, belonging to the testator, in his life-time, and of which the

premises in question are a part, and *John* told him, that he must apply to his brother *Robert ;* and that the land on which the mill was built, was bought by *Robert.* From 1767 to 1772, the premises were held under *Robert*, by one *Dumond*, who paid rent. In 1772, *Robert* leased them for ten years to one *Bullus. Lawrence Van Dusen* and one *Hugener*, afterwards held them under *Robert*, until about 22 years ago, when the defendant went into possession.

*Herman Vosburgh*, a witness on the part of the de-fendant, was called to prove the declarations of *William Claw*, one of the witnesses to the will, in his life-time ; he testified that *Claw* told him that when the will of *Jo-hannes Van Dusen*, was drawn, he, *Claw*, and *Samuel Wheeler*, were called into the room to attest it, which they did ; that the testator was so weak that he could not hold a pen, and *Arent Van Dyck*, the person who drew the will, put the pen into his hand, and made the mark, and that the testator was not in his senses at the time.

The case contained a detail of other testimony, as to the insanity of the testator, and as to the adverse possession of the defendant ; but which, from the opinion of the court, it is thought unnecessary here to state.

The jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial, on the following grounds :

1. Because improper evidence was admitted by the judge.

2. Because proper evidence was rejected by him.

3. Because the verdict was against evidence ; *first* as to the insanity of the testator, and *second* as to the ques-tion of the possession of the defendant.

4. For the misdirection of the judge.

*H. Bleecker*, for the defendant. 1. As to the proof of the execution of the will. Three witnesses are necessary

NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DUSEN.

* *Peake's Law
of Evidence,*
401. (372.)
*Stra.* 1109.
*Comyn,* 531.
*Powell on De-
vises,* 708. 719.

to every devise of lands. When all the witnesses to a
will are dead, their hand-writing, and that of the testa-
tor must be proved.* In the present case, the hand-wri-
ting of two of the witnesses only, was proved. The sig-
nature of the other witness was a *mark* with the initials.
of his name, and the witness who was called to prove
this signature decided on a comparison of this *mark* with
one he had seen made before. He never saw the witness
to the will write.

The object of the statute, as to the proof of wills,
is to prevent fraud. The hand-writing of all the wit-
nesses must be proved ; for it must appear that they
all attested. Proof of the hand-writing of one, does
not prove the attestation of the others ; as it is not re-
quisite that all should attest at the same time.

The process by which the mind acquires a know-
ledge of hand-writing, is from an acquaintance ari-
sing from frequently seeing it, by which the *general
character* is recollected, not from the formation of
particular letters or a single inspection. There can
hardly be such a knowledge of the hand-writing of
one who merely makes a mark. The necessity of
the case is no answer to the positive provisions of the
statute. Courts of law have wisely rejected all evidence
from a comparison of hands, unsupported by other evi-

† *Peake's Law
of Evidence,*
105, 106. (3d
ed.) 4 *Esp. Rep.*
273. by *Day,*
and *notes.* 4
*Esp. Rep.* 117.
*Peake's N. P.*
20. 6 *State Tr.*
275. *Layer's*
case.

dence.† The proper testimony is, " the belief which the
witness entertains. of the writing in question, being the
party's, from some previous acquaintance with his hand."
He must declare his *knowledge*, not his *opinion*, or *judg-
ment*. He must say, " I have seen the party write, and I
know his writing, therefore I believe it to be his hand."
In the present case, the proof of *Wheeler's* signature,
clearly amounts to a comparison of hands. *Henry Van
Dyck*, the witness called, had no knowledge of *Wheeler's*
hand-writing. He could not have any. He was only a
witness once to a mark made by *Wheeler*, in the year
1760. He had no knowledge of his usual manner of

making marks. If the will had been produced to him, without the other papers, he could not have pretended to know the signature of the witness to the will.

In the case of *Garrells* v. *Alexander*,* a witness was called to prove the hand-writing of the defendant to a foreign bill of exchange, and he said he had seen the defendant sign the bail-bond in the cause, but had never seen him write on any other occasion ; that the hand-writing to the bill was like that subscribed to the bail-bond ; but he could form no belief on the subject. Lord *Kenyon* said the witness must form a judgment, without comparing the hands ; and though he allowed the evidence to go to the jury in that case, the propriety of this permission was afterwards strongly doubted by Lord *Eldon*.†

2. The evidence as to the acts of acquiescence of the brothers and sisters of the defendant under the will, was inadmissible. Acts of third persons ought not to prejudice the defendant. He was not bound by their acts. If they thought proper to consider the will as valid, the rights of the defendant ought not to be affected by their admissions, with respect to other property.‡ Again, if these acts were evidence against the defendant, similar acts ought to have been received when in his favour; but they were rejected by the judge.

*Elizabeth Van Dusen*, the mother of the lessors, was an incompetent witness. Her testimony went to establish the title of her husband, and thereby to give her a right of dower. Verdicts are evidence between parties and privies.§ A verdict for or against the plaintiff may be evidence in an action by another for the same thing ; or where the same question of fact has been tried, it may be given in evidence, though not between the same parties. In the present case, the title of the witness to dower, was the same as the plaintiff's title, and the same point or fact was in controversy.

NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DUSEN.

* 4 *Esp. Cases*, 37.

† 8 *Vesey*, Jun. 476.

‡ *Kirby's, Rep.* 62. 174. 203. *Barnes*, 436.

§ *Buller's N.*
P. 232. *Peake's*
*Evidence*, 36.
40. 1 *Gilbert's*
*Evidence*, 32.
35. *Com. Dig.*
*Ev.* (A. 5.)

3. Next as to the proof of the sanity of the testator. Here the counsel went into an examination of the testimony at the trial, and contended that from the whole, there was evidence of his insanity, and that the jury were misdirected on the subject. He contended also, that it was proved, that *Robert Van Dusen*, and those claiming under him, had possessed the premises uninterruptedly since 1760. That the uninterrupted receipt of the rents and profits, without any account, was the highest evidence of an adverse possession.

*Van Vechten* and *Van Dyck*, contra. It is true the law requires the best evidence in the power of the party. Where witnesses to a deed or will are dead, or cannot be obtained, the next best evidence is proof of their handwriting, and circumstantial evidence. As to the proof of execution, a will and a deed are on the same footing. If the hand-writing of the witnesses cannot be proved, still you may give in evidence, facts and circumstances as to the execution. In the case of an ancient will, where no account can be given of a witness, proof of his handwriting may be dispensed with.* The hand-writing of two of the witnesses was fully proved. The general rule is, that the hand-writing of a testator must be proved; but how is the hand-writing to be proved, where the party does not write, but merely makes a mark? All the evidence of the signature that the nature of the case admitted was produced. It is not necessary that the witness, who is called to prove the hand-writing of a party, should have seen him frequently write. Many persons seldom write. It is enough if he has seen him write once, and believes the writing or signature produced to be his. The facts and circumstances were strong, and sufficient to satisfy the jury.

Again, this being an ancient will of more than 40 years' standing, and the testator having been dead for

* *Roberts on Frauds,* 438. 446.

above 40 years, inferior evidence is admissible as to its execution. If the devisees have taken and held under the will, the presumption of law, arising from this possession, according to an ancient will, is that it was duly executed. Besides evidence of the possession under the will, there was recognition of it by the defendant, as to the property in *Canaan.*

The counsel then entered into an examination of the evidence as to the sanity of the testator. As to the rules of law on this subject, they cited *Swinburn*, 46. *Powell on Devises*, 709, to 713. *Buller's N. P.* 236. 4 *Esp. Cases*, 38. 145, 146. *Runnington*, 251. 272. 2 *Term Rep.* 53. 3 *Atkyns*, 359.

*Van Buren*, in reply. Where the possession of property accompanies a deed, it is the possession which affords evidence of the validity of the deed. Its antiquity is, in itself, a circumstance of suspicion. Mere length of time, without strong circumstances in favour of a will, proves nothing. In the present case there was an adverse possession of the premises by the defendant, and a constant dispute about the property. Why was not the will proved, when the witnesses were living? Or why was not this action brought sooner? Inquiries were made about the will above 25 years ago. This long delay in proving the will, and asserting the present claim of the lessors, is very strong evidence of their belief of the invalidity of the will.

He next examined the evidence as to the sanity of the testator, and strenuously contended that the verdict was palpably against evidence on that point. He cited 3 *Bro. C. C.* 440. *Doug.* 241. 8 *Viner*, 43. *Devise*, (A.) 167. (Z.) 6 *Co.* 24. *Winchester's* case.

Admitting, however, the will to be valid, he insisted that the adverse possession of the defendant was suffi-

*Margin notes:*

NEW-YORK, Nov. 1803.

JACKSON
v.
VAN DUSEN.

cient to bar the plaintiff's right of recovery. In 1767 *Robert* let the premises in his own name ; again, in 1772, he leased them to one *Bullus* for 10 years, with covenants. Other persons had possession afterwards, under *Robert*, until about 22 years. ago, when he settled his son, the defendant, upon the premises, who has been in possession during all that time. There is evidence of an exclusive possession in *Robert* and the defendant, for 40 years ; and this possession was adverse from its beginning.

VAN NESS, J. delivered the opinion of the court. The determination of this motion involves the consideration of the following questions of law, viz.

1. Is there sufficient evidence to establish the formal execution of the will of *Johannes Van Dusen?*

2. Was improper testimony admitted, or proper testimony excluded?

3. Was *Elizabeth Van Dusen* a competent witness?

4. Was the jury misdirected, by being instructed, that the sanity of the testator (*Johannes Van Dusen*) was, in the first instance, to be presumed, and that it therefore was incumbent on the defendant, in order to avoid his will, to prove he was not sane?

1. All the attesting witnesses to the will being dead, the plaintiff proved the hand-writing of two of them ; and some slight evidence was given to prove the letters, *S. W.* to have been made by *Samuel Wheeler*, the third witness ; but to the latter, I do not now, nor did I at the time, attach any importance. In addition to this, the plaintiff gave very strong evidence of continued possession of the testator's *Kinderhook* estate, by the devisees and those claiming under them, in conformity to the will ; that estate, at the time of his decease, and for a long time afterwards, being the most valuable part of the real property, and the only portion of it not in dis-

pute. The testator having made his mark, no evidence, of course, could be given or expected, to prove his hand-writing. This is the substance of the testimony, as it stood when the will was admitted; and there can be no doubt, that it was abundantly sufficient to entitle the plaintiff to read it to the jury; but if it were otherwise, this application must now be determined upon all the facts appearing in the case. The declarations of *William Claw*, one of the witnesses to the will, were given in evidence by the defendant; by these the facts that the testator made his mark to the will, and that he (*Claw*) and *S. Wheeler*, duly attested the execution, are fully established; so that this point is no longer left doubtful or controvertible. It is proper, however, to observe, that the counsel who argued in support of this application, appears to me to misapprehend the testimony admitted on the trial, to prove the hand-writing of *S. Wheeler*. It is supposed, that this was an attempt on the part of the plaintiff, to prove *Wheeler's* hand-writing, by what is termed, " comparison of hands," which, it is contended, according to the present settled law, is not competent testimony. I by no means intend to controvert the rule as stated; but, according to my understanding of the evidence given, it has no application to this case. The amount of the evidence is, that the witness (*H. A. Van Dyck*) had once seen *Wheeler* make the initial letters of his name to a paper then in his possession; and that from the peculiar character and structure of these letters, particularly the letter *S*, (which was inverted,) he believed the letters to the will were made by *Wheeler*. This is the usual manner of proving a man's hand-writing, every day pursued in our courts of justice, and differs wholly from that species of evidence to which the objection applies.

2. The evidence improperly admitted is said to be, 1. That of *Daniel Staats*, relative to the declarations of

*John A. Van Buren*, when he and others, the children of *Robert Van Dusen*, sold the mill; 2. The admission of the deed given for the mill; and, 3. The proof of the payment of the consideration, for which the mill was sold, to the grantors of the mill, according to the proportion of interest each claimed therein. The objection is, that this evidence ought not to have been received to prejudice the rights of the defendant; to this I will endeavour to give a satisfactory answer.

It must be distinctly understood that this testimony was offered to establish the formal execution of the will, by showing that possession had gone according to it, and for no other purpose; and also, that at the time it was admitted, the sanity of the testator had not become a subject of inquiry. The *mill* constituted but a small part of the estate of *Johannes Van Dusen*, if it ever did belong to him. The counsel for the defendant contend, that it never did belong to him; and they proved on the trial, that *Robert Van Dusen* purchased the ground upon which the mill was erected, subsequent to his father's decease. It appears, however, that the mill was built at the joint expense of the three brothers, *John, Robert and Lawrence;* that they occupied it as tenants in common; that it was placed opposite to where a mill of *Johannes Van Dusen*, the father, had previously stood, on a different side of the *Kinderhook* creek, and the dam probably extended over the land formerly of *Johannes.* If the fact be, as the counsel for the defendant aver, that the mill was not parcel of the real estate of *Johannes Van Dusen*, then the testimony in question could not possibly have had any influence upon the decision of the cause, and the objection would, for that reason, fall to the ground. I admitted the evidence, however, in a stage of the trial when the mill appeared to have been parcel of the estate of which *Johannes Van Dusen* died seised. Was it then proper? It is conceded that the fact of con-

tinued possession, under an ancient will, is good evidence to show the formal execution of it. How is that fact to be made out in the present case? The real estate of *Johannes Van Dusen*, at the time of the trial, was occupied by various persons, and some of it had passed through several hands, before it came to the then possessors. To prove that it had uniformly been held under the will, the plaintiff was obliged to trace back the possession of the different portions of it through the several successive occupants, up to the will. He accordingly first proved the partition of the farm in *Kinderhook*, between the three devisees, *Robert*, *John* and *Lawrence*, pursuant to the disposition thereof made in the will. The mill, then owned and possessed by *Staats*, was next shown to have been claimed and possessed under the same title. It is insisted that it was not competent to prove this fact, by the declarations and acts of *Van Buren*, and the other parties to the deed to *Staats* and *Van Alen*. How else is it to be made out? They were in possession at the time, and it is every day's practice to admit the declarations of the person in possession, to show under whom, and by virtue of what title he holds. That such evidence is proper, has been so repeatedly decided by this court, that I supposed the point was completely at rest. If the fact, that the mill was held under a title derived from the will of *Johannes Van Dusen*, had been shown by the mere naked declarations of *John A. Van Buren*, I possibly might have decided that it was not sufficiently established. But these declarations are supported by the solemn deed, executed by him and others, the children of *Robert*, to *Staats* and *Van Alen*, and by the payment of the consideration for which it was sold, in such a manner, as to demonstrate that they held under the will, and under no other title whatever. For these reasons, I think this testimony was properly admitted, and that the verdict ought not to be disturbed on this ground.

But granting, for a moment, that this evidence was improperly received, it by no means follows that a new trial should be granted. It is for the admission or rejection of material testimony only, that new trials are awarded. I cannot believe that the evidence in question, in the least contributed to the verdict that was given. It was a mere feather in the scale of evidence. The determination of the cause depended on other leading and prominent facts, in comparison with which, those in question dwindle into trifles.

The testimony which it is contended was illegally excluded, is that relating to a purchase made by *Staats*, of the share of *John Van Dusen*, of the old mansion-house of *Johannes Van Dusen*. The defendant offered to prove, that *Staats* relinquished the purchase, because some of *Robert Van Dusen's* children, denied the validity of *John's* title, under the will. Admitting all this to have been proved, it is difficult even to imagine that it could have had any effect upon the decision of the cause. The testimony, I continue to think, was properly excluded, on the ground of its utter inconclusiveness and immateriality.

3. That *Elizabeth Van Dusen*, was a competent witness, has been decided in the case of *Jackson, ex dem. Griswold*, v. *Bard*. (4 *Johns. Rep*. 230.) She had no other interest in the cause than what grew out of her right of dower in the premises. The verdict in this cause could not be given in evidence, in a suit to be brought by her for the recovery of her dower. (*Peake's Evidence*, 27.)

4. As to the alleged misdirection of the jury. In all cases where the act of a party is sought to be avoided on the ground of his mental imbecility, the proof of the fact lies upon him who alleges it, and until the contrary appears, sanity is to be presumed. This rule of law is recognised by all the elementary writers on the subject;

and in all the adjudged cases which I have met with,
both in law and equity, the court, in their reasoning and
opinions, seem to take it for granted. (*Swinburn*, 3. 45.
*Bac. Abr.* let. F. tit. *Idiots.* 1 *Peake's Ev.* 373. *Lovelass*
on *Wills*, 15. 142. 6 *Cruise's Dig.* 14. 3 *Atkyns*, 361.
*Tucker* v. *Phipps.* 3 *Br. Ch. Rep.* 443. *Attorney General* v. *Parnther.* 13 *Vesey*, jun. 87. *White* v. *Wilson.*)

This rule, undoubtedly, has its qualifications ; one of
which is, that after a general derangement has been
shown, it is then incumbent on the other side to show
that the party who did the act, was sane at the very time
when it was performed.   The defendant does not complain that the law was not so stated ; nor is there any
just ground for such complaint, because, in fact, it was so
laid down to the jury.  But independently of authority,
the law ought to be so.   Almost all mankind are possessed of at least a sufficient portion of reason to be able
to manage the ordinary concerns of life.  To say, therefore, that sanity is not to be presumed, until the contrary is proved, is to say that insanity or fatuity is the natural state of the human mind.

There is another ground upon which the motion for a
new trial, is attempted to be supported, viz. that the verdict is against the weight of evidence, both in regard to
the sanity of *Johannes Van Dusen*, when he executed his
will, and the adverse possession relied upon by the defendant.   The law on the first point, as has been already
shown, was correctly stated to the jury, and on the other
it has not been called in question.   Both were questions
of fact, and as such were submitted to the decision of the
jury, who have decided in favour of the plaintiff.   One
of my brethren, I understand, would have been as well,
and another better satisfied, if on the question of sanity,
the verdict had been the other way ; but we all concur in
the opinion, after a full consideration of the evidence,
that it is not expedient to grant a new trial on this

NEW-YORK,
Nov. 1809.

ground.   I forbear to express my own opinion on which side the weight of evidence lies, lest it might prejudice any future investigation that may take place.

I have thus, as briefly as the nature of the case will admit, considered the various questions arising upon this case, and the result is, that the motion for a new trial must be denied.

Rule refused.