ROBINS and others, appellants, *vs.* CORYELL, respondent.

The law, in regard to the execution of wills, remains as it is in England and as it was in this state before the revision of 1830; except that a subscription at the end of the will is substituted for a signing, and provision made for acknowledging and publishing the will, and the number of witnesses is reduced from three to two. No other alteration was intended by the legislature, at the time of the revision.

Accordingly, where the testator had received an injury, which made it difficult for him to hold a pen—his fingers being partially paralyzed, and another person signed his (the testator's) name to his will at the testator's request and in his presence; after which the testator acknowledged the signature to be his, and declared the instrument to be his last will and testament, and requested two persons to sign it as witnesses; *Held* that this was a valid execution of the will.

APPEAL from a decree of the surrogate of the county of Steuben, establishing the will of John Robins deceased, as a valid will of real and personal estate, and admitting the same to probate as such. The will was contested by the children and heirs at law of the deceased, on the ground that the same was not properly executed. The proof in regard to the execution was that the testator had received an injury to the spinal marrow, a little below the points of the shoulders, the effect of which was to paralyze the parts below; that it, in a measure, paralyzed the arms and the fingers, which made it difficult, at least, to hold a pen. That the doctor told him he had better not try to write; he did not think he could use his fingers to do it. The testator then requested Mr. Cobb, one of the attesting witnesses, (the other attesting witness being also present,) to sign his (the testator's) name, at the end of the will. Mr. Cobb did so in his presence; after which he took the paper and held it up to the testator, and asked him if he could read it. He replied that he could. Mr. Cobb then asked him if he acknowledged it as his signature. He said he did, and at the same time declared it to be his last will and testament, and requested the witnesses to sign it as such. It had been previously read over to him, and he appeared to understand it. Cobb then wrote the attestation clause, and he, and another person,

signed the same as witnesses, in the presence of the testator and in the presence of each other.

Two of the heirs at law of the testator appealed from the decree.

*S. H. Hammond,* for the appellants.

*G. H. McMaster,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The only question presented upon this appeal is, whether under our statute a will can be properly executed without being attested by the actual sign manual of the testator. The statute of frauds and perjuries, of the 29th of Charles 2, ch. 3, declared that "all devises of lands and tenements should not only be in writing but signed by the testator or some other person in his presence and by his express directions, and be subscribed in his presence by three or more credible witnesses." This statute was re-enacted in this state after the revolution, and remained the law until the revision of 1830. (1 *Rev. Laws of 1813, p.* 364, § 2.)

The revisers proposed to re-enact this statute precisely as it stood, in substance, and reported a section for that purpose, and also reported an additional section which was enacted as reported, and was numbered 33 in the first edition of the statute, and is now section 41 of the fourth edition. Instead of enacting section 5 of the revisers' report, the legislature substituted the present section, number 32, in the first edition of the statutes, which is as follows: Sec. 32. "Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: 1st. It shall be subscribed by the testator, at the end of the will. 2d. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made, to each of the attesting witnesses. 3d. The testator, at the time of making such sub-

scription or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.   4th. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."   It is not claimed by the appellant, upon this appeal, that all the provisions of this section have not been fully complied with in respect to the execution and publishing of the will in question, except the provisions relative to the subscription of the will by the testator.   The name of the testator was put to this will by a subscribing witness, by the *express direction of the testator.*  The question is, whether such a subscription is valid, under this statute.   The provision in this section, that the will shall be *subscribed by the testator at the end of the will,* coupled with the omission of the provision in the act of 29 Charles 2, and in our statutes, before the revision of 1830, and in the section as reported by the revisers, of the words *"or some other person in his presence, and by his express direction,"* is supposed to imply a purpose on the part of the legislature to alter the law upon this subject so as to disallow such an attestation as was made in this case, and such as was clearly allowable before the revision.   By requiring a *subscription* by the testator, and at the end of the will, the legislature clearly intended to repudiate the preposterous misconstruction which had been given by the English courts to the statute of Charles 2, that a will might be signed *any where,* at the beginning, upon the side or margin of any sheet, or at the end. (3 *Levins,* 86. ———— v. *Stanley,* 9 *Ves.* 248.)   But in requiring a *subscription* instead of *signing,* as in the old law, and at the end of the will, I think the legislature intended no other alteration of the law on that point.   If they had not enacted the next section (§ 33,) precisely as reported by the revisers, or had stricken out of it the words *"and every person who shall sign the testator's name to any will, by his directions, &c."* then the inference would have been legitimate and unavoidable that they intended to alter the law, and disallow such a subscrip-

tion or signature. But it seems to me that the enactment of section 33, containing the words just quoted, is a clear legislative declaration that such signature or subscription to a will, that is, putting the testator's name thereto by his *direction*, is a proper and sufficient subscription thereof by the testator. It certainly negatives the idea that the legislature intended to change the law in that particular. And such is the view of this section entertained by Chancellor Walworth in 10 *Paige*, 91, 92. (*And see* 4 *Comst.* 146 ; *Lewis* v. *Lewis*, 13 *Barb.* 17.) The fact, also, that in subdivision 2 of said section 32, it is provided that the testator may *acknowledge* his subscription to the will to each of the attesting witnesses, confirms the view that the legislature did not intend to require an actual subscription in the presence of such witnesses, as indispensable to the validity of the will. When the witnesses do not see the will signed, its execution is equally valid if it is then acknowledged to them. And in such case the question could not arise, or the objection obviously could not be maintained, that the signature was not in the actual handwriting of the testator. When the testator has acknowledged the execution of the will, as prescribed in the statute, it cannot be material that the signature was, or is, his actual sign manual or handwriting, or was put thereto by another, by his directions. If the statute requires, as the counsel for the appellant contends, an actual manual *subscription* by the *testator*, then it follows of course that no will can be valid without such subscription. This construction of the statute would preclude persons who were unable to write from physical disability, or other cause, from making a will at all ; for the subscription of the statute doubtless means and requires that the name of the testator be written in fact at the end of the will. Such construction would render entirely nugatory the above section 33, except the provision that the witnesses shall write opposite their names their places of residence. But this objection is met by the argument that this section is designed to apply to cases where the testator subscribed by making his *mark*. It seems

to me that this concession practically concedes the whole ground. It allows a species of substituted subscription in the place of an actual one in the hand writing of the testator, in person. If the legislature intended to require the actual personal subscription of the testator to prevent frauds and forgeries and perjuries, or any other rational object, such purpose is as completely frustrated by allowing a subscription by *marks* or *signs* as by allowing such subscription to be made by another person in the presence, and by the direction, of the testator. *Marks* are merely arbitrary *signs or symbols*—mean nothing, identify nothing, and constitute no material testimony in establishing a subscription in fact by the testator. (12 *Ves.* 458. 1 *Rob. on Wills*, 94.) Such attestation, however, by the testator, was held valid before the revision of our statute, (5 *John.* 144. 1 *Jarman on Wills*, 111,) and since such revision in 10 *Paige*, 86. And it was also held under the statute 29 *Car.* 2, *chap.* 3, which requires that the will shall be *subscribed* by three witnesses, &c.; that the making of his mark by a witness was a sufficient *subscription* by him. (*Addy* v. *Grix*, 8 *Ves.* 504. *Harrison* v. *Harrison, Id.* 185. *Jackson* v. *Van Dusen*, 5 *John.* 144.) But the attestation by the testator by his *mark* being a sufficient signing by him, and the attestation by their marks a sufficient subscription for the witnesses, the provision in the statute for a subscription of the testator's name in his presence, and by his express directions, must have been intended for some other mode of subscription than by *marks* or *signs*. In none of the cases is the attestation by marks referred to, or based upon that provision of the statute. Signatures by *marks* are treated as original signatures, as a *signing* or *subscription* by the testator and witnesses, the same as the writing of their name in person; and so it is in respect to all deeds or written instruments. (7 *Bing.* 457. 2 *Ves.* 454. *Atk.* 177. 12 *Peters*, 150. *Baker* v. *Deming*, 8 *Adolph. & Ellis*, 94.)

If, therefore, the subscription of the testator's name *in his presence and by his express directions*, to a will, was ever in

any case a valid subscription, without any mark or sign of the testator thereto, then the will in this case was properly executed. If not, this provision was always, in the act of 29 *Car.* 2, and in our former statute, (1 *R. L.* 364, *sec.* 2,) as well as the above provision in section 33 to the same effect, utterly unnecessary and nugatory.

But the counsel for the appellant also insists that a will must be personally signed by the testator, and cannot be executed by an agent; that while all other deeds and contracts or instruments in writing may be executed by an agent, wills cannot be so executed. If this be so, it is, I think, a mistake, to regard a will to which the testator's name is subscribed by another person in his presence and by his express directions, as executed by an agent. What is done *for* a man *in his presence* and by his *express directions,* is his act and *deed.* If a man tells his wife or his son, or any other person, to put his name to a deed or promissory note, and it is done in his presence and in pursuance of such directions, it is well executed by him. Such execution, not being in his handwriting, would of course require proof of such authority and directions and manner of execution. To meet this necessity in respect to wills, said section 33 requires that "every person who shall sign the testator's name to any will, by his direction, shall *write his own name as a witness to the will.*" Such an execution of a *will* is not done by an agent. It is done by the testator himself.

Upon the point in question, I think the law in regard to the execution of *wills* remains as it is, in *England,* and as it was in this state before the revision of 1830; except that a *subscription at the end of the will* is substituted for a *signing,* and a provision made for acknowledging and publishing the will, and the number of witnesses is reduced from three to two. That no other alteration was intended by the legislature at the time of the revision; and that the execution of the will in this case in the manner stated in the case, as it would have been clearly valid before 1830, is valid still, under the present

statute. The decree of the surrogate admitting the said will to probate and establishing the same as a valid will, should therefore be affirmed.

Decree affirmed.

[CAYUGA GENERAL TERM, June 7, 1858. *Johnson*, *Welles* and *Smith*, Justices.]