By the Court, Robertson, J.
This was an action on a lost bond of indemnity against a builder’s lien, claimed to be signed by the appellant, the defendant Osborn, and his co-defendants Calrow and Naylor. Two questions were raised on the trial; one as to due proof of its loss to admit secondary evidence of its contents, and the other as to its execution by the appellant. Sufficient prima facie evidence of its loss to admit secondary evidence of its contents, seems to have been offered on the trial. The plaintiff endeavored to establish the execution of such bond by the appellant in three ways, by his admissions, by proving his signature, and by its acknowledg-ment before a commissioner. The only admission proved was, that on being told by the plaintiff “You are one of the bondsmen as surety for that lien on the store,” he said, “I don’t know any thing about that; I don’t recollect; no, I don’t recollect any thing about that, Mr. Magie.” He also said he had signed various bonds—a number of bonds for Naylor, but he had no knowledge now of signing one for the plaintiff. He said he had some memorandum of the bonds he had so signed. He merely stated his want of recollection of signing such bond. There was no evidence of the name or signature of the commissioner of deeds, but only that the execution of the bond purported to be acknowledged before some one claiming to be such officer.
The only witness examined as to the signature of the appellant to the bond in question, had been the former counsel of the defendant Naylor, (Parsons.) In reference to his oppqrtunities of becoming acquainted with the appellant’s handwriting, he testified: That he had seen it on several occasions. He thought Osborn was at his office and had executed one or more papers for the defendant Naylor. His recollection was. *692 that he saw him. execute several papers. That was Ms best recollection; that he “had seen Mm write in Ms office on one. or more occasions when he came to execute papers.'” This, perhaps, ¡though very'faint,' might be sufficient to go to the jury on the question of the enjoyment by'the witness of an opportunity, by means recognized by the law, of becoming acquainted with the party’s handwriting, (Garrels v. Alexander, 4 Esp. 37, and comments thereon of Lord Eldon, in Eagleton v. Kingston, 8. Ves. 438;) the question .being not on'the frequency of the opportunities, but their nature and degree .of impression. "
But the .testimony of. the same witness in regard to his improvement 'of such opportunities, and his knowledge derived therefrom of the .character, of the appellant’s handwriting, is still weaker. He stated, “ That he had seen Osborn write in his office on one" or moré occasions, * ®. and became acquainted with' his signature to that extent, at that time •” what" extent he meant does not clearly appear, but it could not have been any further, than the degree of acquaintance produced byseeing him write once or twice; which may have been none at all. That extent is better shown on his cross-examination, in which he stated that “he was not an expert in signatures.'. If there was a good imitation he should call it Osborn’s, and so of. anybody else’sand he finally acknowledged in. answer to a question put to him to that effect, that he was not “sufficiently familiar with Osborn’s handwriting to discriminate between a genuine signature and a tolerably good imitation of one.” This showed, at least, as little ac-> quaintance with the handwriting sought "to be proved as the witness in the case of The Utica Insurance Co. v. Badger, (3 Wend. 102,) which was held to be barely sufficient. :
"With such -uncertain opportunities of seeing the appellant write, and such doubtful ability to decide whether any signature was his, the same witness undertook to testify as to his views of the particular one in question. He said, “ He thought he recognized the signatures to the bond in question.” That he “ recognized the bond as being signed by ” the appellant. *693 “ That he recognized it at the time as a genuine instrument,” and that was all. What he meant by recognizing aninstrument seen by him for the first time does not clearly, appear." His recognizing one of the signatures to be the appellant’s, would have been more to the purpose, as he thought he' had seen him write. But he does not go as far as that, but states merely that he recognized the signatures to the bond, which is scarcely equivalent to a statement that in his opinion the signature was the appellant’s."
At all events, he nowhere undertakes to say, in pronouncing upon the signature as being the appellant’s, that he ’does so from acquaintance therewith, derived from the ■ opportunities he had of seeing him write. Starkie in his work on evidence, (vol. 2, 372, 6th Am. ed.) lays down the principle that any witness may be called to prove handwriting who has “ in either of the modes which the law recognizes as legitimate, acquired such knowledge of the general character of the party’s handwriting as will enable him to swear to his belief that the handwriting in question is his.” It ■ is very plain that the belief must be founded on such knowledge. Mere'opportunity of seeing a person write, and an acquaintance with the character of his handwriting, does not render a witness competent to express his belief, founded upon other facts, as to the genuineness of the. handwriting. (Da Costa v. Pym, Peake’s Add. Cas. 144.) The judgment of a witness upon a writing he did not see made, as a matter of opinion, and not a statement of an occurrence addressed to his senses, must necessarily be that of an expert. Justice Pattesou, in Doe, ex dem. Mudd, v. Tuckermore, (5 A. & E. 730; and S. C. 1 Nev. & P. 22, 56,) declares it to be “the belief which a witness entertains upon comparing the writing in question with an exemplar in his mind, derived from some previous knowledge.” That comparison alone must be the source of the belief, and that with which it is to be made is the exemplar derived from previous knowledge alone.
To hold otherwise would be either to permit the illiterate or careless observer, under whose eyes, merely, a signature or *694 even initials (Jackson v. Van Dusen, 5 John. 144,) have been made, by force of that occurrence, to become forever qualified to give his opinion as to any other writing 'by the writer of the signatures or initials, or if knowledge of the handwriting has been acquired by such opportunity, to be vested with power to pronounce upon such handwriting, although influenced only by inferences or probabilities created by other facts than the character of the handwriting. Either of those propositions would render the admission of the exceptional case of testifying as to handwriting by opinion, still more dangerous, and the rule by which it is justified, absurd. The law can not presume either that every one who has seen another write must, prima facie, have acquired a knowledge of his handwriting, or that witnesses, if allowed to express a belief as to the author of a handwriting, without stating the grounds of it, will not found it upon any thing but their knowledge of it. It may be said, it is true, that the grounds of belief may be elicited on cross-examination; but- if the testimony is to be rejected in case they prove to be any thing else but the knowledge derived from experience, it proves that such knowledge is necessarily the only legal foundation for it.
Although, perhaps, no case expressly adjudiciates this point, they all assume it. .In Johnson v. Daverne, (19 John. 134,) where seeing instruments recognized by the party whose handwriting was sought to be proved, was held to be a legitimate mode of acquiring the proper acquaintance with it, the witness’ belief of a signature being such party’s, was only held to be sufficient if it arose from such knowledge ; and similar language of the same qualification is used in other cases. (Titford v. Knott, 2 John. Cas. 211. Harrington v. Fry, 1 Ry. & Moo. 90. Thorpe v. Gisburne, 2 Car. & Payne, 21.) A witness has even been allowed to look again at a former signature on seeing the making of which his knowledge rested, in order to ^etouch and strengthen his recollection. (Redford’s Adm’r v. Peggy, 6 Rand. 316.)
It is surely as important to require the witness who is testifying to handwriting, to state whether what he states is *695 founded upon the acquaintance with it, derived from experience, as it is to require a witness who assails the general character of another witness, to state that the opinion he gives, as to his credibility, is founded upon his knowledge of that general character, bio such requisition was made in this case, and the testimony of the witness as to the genuineness of the signature without it, was therefore insufficient or incompetent to prove such handwriting, and there was no other proof of the execution of the bond.
The judgment should be reversed, and a new trial directed, with costs to abide the event.