## SUPREME COURT.

CYPRIAN S. BRAINERD, JR. agt. JESSE A. HEYDRICK, and others.

The *subscription* of the *name of an attorney* issuing a *summons*, is not required to be made by *himself personally ;* but it may be made by another with his authority. It necessarily follows, that his name may be *printed,* as a substitute for his written signature. (*This agrees with the case of The Mutual Life Ins. Co.* agt. *Ross,* 10 *Abb.* 260, *and is adverse to the case of The Farmers' Loan and Trust Co.* agt. *Dickson,* 17 *How.* 477.)

It is well settled, that where a person is in the habit of using documents with his name *printed* thereon, this will be his *signature* within the meaning of the statute of frauds.

The *name* of an attorney issuing a *summons,* is as effectually disclosed when it is *printed* as if it were written, and his responsibility to the defendant and to the court, in either case, is the same.

In granting an order of publication for the service of summons in an action for the *foreclosure of a mortgage,* the Code requires that it shall appear "by affidavit to the satisfaction of the court or a judge" granting the order that the person on whom the service of the summons is to be made, cannot, after due diligence be found in this state. There is no good reason why this may not be shown by an *affidavit* properly made and forming a part of the records of the court, although made in *another action,* and not in the particular action in which the order is asked.

In an action for the foreclosure of a mortgage, the *non-residence* of the defendants is not necessary to be shown. It is sufficient to establish the fact satisfactorily that they could not, after due diligence, be found within this state, so as to enable the plaintiff to effect the service of the summons on them.

A *copy order* appointing a *guardian ad litem* of a non-resident infant defendant, is not invalid by reason of being deposited in the *post office* two days before the order and the affidavits on which it was founded *were filed,* where it appears that the order was made on the day of the deposit. The order becomes effectual when filed, from the time it is granted. The previous deposit is, at most, an irregularity that can be remedied at any time by filing the order *nunc pro tunc.*

*Kings County Special Term September* 1866.

THIS is an application on behalf of a purchaser of mortgaged premises sold under a judgment of foreclosure and sale, to be discharged from his purchase on the following grounds :

1st. That the summons is not subscribed by the plaintiff or his attorney.

2d. That the affidavit on which the order of publication was granted is insufficient ; and

3d. That no copy of the order appointing a guardian *ad*

*litem* of the non-resident infant defendant, was served according to the terms of the order.

WM. HENRY ARNOUX, *for the purchaser.*
BRAINARD, RICE & BURNETT, *for the plaintiff.*

LOTT, J.   These grounds will be examined in the order they are above stated :

1st.  The first objection is based on the fact appearing by the judgment roll, that the names of the plaintiff's attorneys are printed at the end of the summons forming part of the roll.   This, it is claimed, is not a compliance with the requirements of the Code, which provides that " the summons shall be subscribed by the plaintiff or his attorney," and shall require the defendant to " serve a copy of his answer on the person whose name is subscribed to the summons," &c.

It then becomes necessary to determine whether a summons issued by an attorney, with his name printed at the end thereof, is subscribed by him within the meaning of that provision.

Two cases were referred to on the argument of the motion in which the question has been considered, and I have been unable, after a careful examination, to find any other, and in those the learned justices who examined it arrived at different conclusions.

The first was the case of *The Farmers' Loan and Trust Company* agt. *Dickson,* reported in 17 *How. Pr. Rep., p.* 477 ; *and also in* 9 *Abb. Pr. Rep., p.* 61, which was decided by Justice INGRAHAM, at special term in the first district.   A motion was there made by a purchaser to be relieved from a sale, on the ground, among others, that the name of the attorney was printed at the end of the summons, and the learned justice after considering two other objections that were made to the proceedings, and stating that one of them could be remedied by filing an affidavit of the summons on one of the defendants " *nunc pro tunc,*" says in relation to that now under consideration :   " The summons should have been signed by the plaintiff or his attorney (§ 128), and the

printed name of the attorney was a nulity. As the copy served was correct, the plaintiff might also file a copy properly signed *nunc pro tunc.*"

The other case was that of *The Mutual Life Insurance Company* agt. *Ross*, reported in a note at page 260 of 10 *Abb. Pr. Rep.*, in which the defendant moved to set aside the summons served upon him, on the ground that the name of the plaintiff's attorney was printed at the end thereof. On the argument of that motion, the decision of Judge INGRAHAM was referred to and commented upon by counsel, and the report of the case closes with saying that "E. D. SMITH, J., after consideration, denied the motion with costs, upon the ground that a printed subscription is a substantial compliance with the statute, and the objection was technical, and if there was a defect it was immaterial."

Neither of these learned justices appears to have assigned the reasons for the conclusion at which he arrived. I am, therefore, obliged to examine the question embarrassed by their difference of opinion, without the benefit of the aid which those reasons would have afforded. In doing this it may be useful to ascertain the scope and extent of the decision of Justice INGRAHAM. He treats the words "subscribe" and "sign," as synonymous; and when he says that the summons should have been signed by the plaintiff or his attorney, and that the printed name of the attorney was a nullity, he clearly indicates that such signature should have been in the proper handwriting of such attorney. If this was his meaning, he was, in my opinion, mistaken. Previous to the adoption of the Code, it was provided by the Revised Statutes (2 *Rev. Stat. p.* 278, § 9), that all writs and process issued out of any court of record, should before the delivery of the same to any officer to be executed, " be subscribed or indorsed with the name of the attorney, solicitor or other person," by whom the same was issued ; and yet in the same title, at page 286, section 70, it is declared that " if any attorney or solicitor shall knowingly permit any person, not being his general law partner, or a clerk in his office, to sue out any process, or to prosecute or defend any

action in his name, such attorney and solicitor, and every person who shall so use the name of any attorney or solicitor, shall severally forfeit to the person against whom such process shall have been sued out, or such action prosecuted or defended, the sum of fifty dollars."

This last provision is still in force, and by exempting the general law partner and the clerks of an attorney, from the penalty imposed for using his name in issuing process, and prosecuting and defending actions, it is clearly implied that it may be so used by them by his permission and authority.

Although the Revised Statutes provide that the process " shall be subscribed or indorsed *with the name* of the attorney, solicitor or other person," issuing the same, and the requirement of the Code is, that " the summons shall be subscribed by the plaintiff or his attorney ;" the difference in the phraseology does not, in my opinion, justify the conclusion that a difference in practice was intended.

It will be observed that the use by a clerk of the attorney's name, appears to be authorized under the provision above referred to, in actions in which the attorney himself has no interest or connection, and it has, I believe, been the general practice of attorneys to allow a clerk in their office to sign their name to process issued by them. The authority given to the clerk by the attorney in such a case, makes it his act, and he is responsible therefor to the court and the party proceeded against, and I have found no case where the practice has been called in question. There certainly appears no reason in principle why it should not be permitted. There are many instruments which the law requires to be subscribed or signed by the parties to be bound thereby, and yet a subscription or signature by him personally is not necessary. Thus the statute regulating the execution of wills, after expressly providing that every will " shall be subscribed by the testator," recognizes a signing of his name by another person, as a compliance with that provision, by a subsequent requirement that " every person who shall sign the testator's name to any will, by his direction, shall write his own name as a witness to the will ;" and it was

distinctly decided in *Robins and others* agt. *Coryell* (27 *Barb. Sup. Co. Rep.*, *p.* 556), after a full and careful examination of the question, that the writing of the testators's name to a will, by another person, in his presence and by his direction, is a subscription by him within the meaning of that statute ; and an opinion to the same effect is expressed by Chancellor WALWORTH in *Chaffee* agt. *Baptist Missionary Convention*, &c. (10 *Paige*, *p.* 91, &c.), and by HAND, J., in *Butler* agt. *Benson* (1 *Barb. Sup. Co. Rep. p.* 533, &c). So the statute of frauds, requiring certain agreements to be in writing, and to be signed or subscribed by the party to be charged therewith, is satisfied by the signature or subscription of the name of such party thereto by another person duly authorized to make it.

If such is the rule applicable to statutes, in the case of wills and other written instruments requiring the subscription of parties, I am unable to discover any reason why a different construction should be given to that in relation to legal process. The views thus presented lead us to the conclusion that a subscription of the name of an attorney issuing a summons, is not required to be made by himself personally, but that it may be made by another with his authority ; and assuming this to be correct, it seems to follow that his name may be printed, as a substitute for his written signature. A party may in the ordinary transactions of business, become bound by any mark or designation he thinks proper to adopt and use for his name. It was decided in *Brown* agt. *The Butchers' and Drovers' Bank* (6 *Hill's Rep. p.* 443), that Brown was liable as indorser, by an indorsement of the figures " 1, 2, 8," made by him in lead pencil, no name being written thereon, it also appearing that he could write. In that case, the court instructed the jury that if they believed the figures were made by Brown as a substitute for his proper name, intending thereby to bind himself as an indorser, he was liable, and this ruling was sustained on review. So it has been held by the general term in this district, in the case of *The Mechanics' Bank* agt. *Sullivan*, heard in December, 1862 (but not reported I believe),

that a notice of the protest of a note sent to an indorser by a notary, with his name printed at the end of it, was sufficient.

It is a common practice for a person who is unable to write his name to make his mark, and the making of such mark is held to be a good signing or subscription, within the requirements of the law, by a testator to a will. (*Baker* agt. *Demins*, 8 *Adolph. & Ellis*, *p*. 94; *Jackson* agt. *Van Dusen*, 5 *Johns. Rep. p*. 144; *Chffaee* agt. *The Baptist Missionary Convention*, 10 *Paige*, *p.* 85, &c.)

In the case of *Baker* agt. *Deming*, above cited, the court refused to permit an inquiry whether the person making his mark could write or not; adopting the rule that the requisite of *signing* by the statute of frauds, was satisfied by the mark of the devisor, irrespective of his ability to write.

Under our statute, it is required that a subscribing witness "shall sign his name as a witness," and it was claimed in the case of *Morris* agt. *Kniffin* (37 *Barb. Sup. Co. Rep. p*. 336), among other things, "that a mark-man cannot be, and is not a subscribing witness, within the meaning of the statute;" but the supreme court, at general term in the third district (Justice HOGEBOOM giving the opinion), held that where a witness makes his mark instead of writing his name, it is still a signing of his name or subscription, within the meaning of the statute, and he refers with approbation to the decision by Surrogate BRADFORD, in the case of *Meehan* agt. *Rourke* (2 *Bradf. Rep. p*. 385, &c.), where he discusses the question, and concludes that such a mode of attestation was a sufficient compliance with the statute. (*See also Jackson* agt. *Van Deusen*, *supra*.)

So it was held by the lord chancellor in England, in *Harrison* agt. *Harrison* (8 *Vesey's p*. 185), that a will was sufficiently executed where one witness only subscribed his name, and the two others attested it by setting their marks respectively," and in that case it was shown that there had been a great many cases where it had been held to be sufficient for a "marks-man" to be a witness. (*See also Addy* agt. *Grix*, 8 *Vesey's p*. 504, &c.)

It appears also to be settled that where a person is in the habit of using documents with his name printed thereon, this will be his signature within the meaning of the statute of frauds. (2 *Parsons on Contracts, p.* 289, &c. ; see also *Saunderson* agt. *Jackson,* 2 *Bos. & P. p.* 238 ; and *Schneider* agt. *Norris,* 2 *M. & S. p.* 286).

In the last case LE BLANC, J., said, "Suppose the defendant had stamped the bill of parcels with his own name, would not that have been sufficient? Such a stamping as it seems to me, if required to be done by the party himself, or by his authority, would afford the same protection as signing."

There are also many cases where printing is substituted for writing in instruments which under our statute are required to be in writing. It is the general practice for deeds or conveyances of real estate, and bills of sale of personal property to be printed, and it is very common to use printed agreements for the sale of both real and personal estate, and their validity is conceded, yet the statute declares that all conveyances of land, and all contracts for the sale of lands, or a note or memorandum thereof, shall be in writing, subscribed by the party by whom the conveyance or sale is made, and also makes it necessary for a note or memorandum of every contract for a sale of goods, when the price thereof is fifty dollars or more, to be in writing, except in cases of part payment of the purchase money, or delivery of part of the goods. (*See* 2 *Rev. Stat. p.* 134, § 6, *p.* 135, § 8, *and p.* 136, § 3.

Assuming then that such instruments when printed are "*in writing,*" within the requirements of those provisions of the statute, is there any good reason why printing of an attorney's name may not be permitted, as and for his signature to a summons or other legal process? In this connection I will refer to the fact that the Code provides for the service of a summons by delivering a copy thereof on a defendant, without the necessity of showing him the original (§ 134), and also authorizes a copy to be inserted in the judgment roll (§ 281). This appears to me a material fact

in determining the question now under consideration.　It is by the service of the summons that the action is commenced, and jurisdiction over the party is acquired, and if the service of a printed copy (for there is nothing to prohibit such a copy) is sufficient for that purpose, and such a copy may properly form a part of the judgment roll, there is no valid reason for requiring the paper spoken of, and denominated as *the* summons (but which may never be filed, but be forever kept in the pigeon holes of an attorney's desk), to be subscribed with the *written* name of the attorney, and for holding a printed subscription to be a nullity.

The *name* of the attorney issuing the summons, is as effectually disclosed when it is printed as if it were written, and his responsibility to the defendant and to the court, in either case is the same.

It would be necessary in any proceeding against him, to show that he was in fact the attorney issuing the process, and although there might be more difficulty in making that proof when his name was printed than there would be if it were written by himself, or by another with his authority, that difficulty exists in all cases of agency, and is not sufficient, on the ground of public policy or of any inconvenience to suitors, to require a different or a more stringent rule in case of legal process, than in any other case affecting the private rights of individuals.

The different considerations above presented, lead me to the conclusion that the summons in this case was subscribed within the requirements of the Code, and that the first ground of objection to the proceedings is consequently not well taken.

2d. The second objection involves the sufficiency of the affidavit on which the order of publication was granted.

It appears by the judgment roll, that the order purports to have been founded on an affidavit entitled in this action, made by David B. Burnett, one of the plaintiff's attorneys, and another made by Jeremiah Johnson, Jr., in a different action against the defendants in this, commenced by E. Brutus Brainerd, as plaintiff.　The affidavit of Mr. Burnett, after setting forth the nature of the action, and showing

that all of the defendants proceeded against as absentees, are proper parties, states "that the said defendants are, as deponent is informed and believes, non-residents of this state, and are now absent therefrom, and cannot, with due diligence, be served with summons herein; that as deponent is informed, the defendants Jesse A. Heydrick, Elizabeth Heydrick and —— Heydrick, reside at Franklin, in the state of Pennsylvania; and that the defendants Charles H. Heydrick, and Anne, his wife, reside at Utica, in the said state of Pennsylvania." This was verified on the 13th day of May, 1866. The affidavit of Mr. Johnson was made on the 7th day of the said month of May; he stated positively, as a fact, that the said defendants at that time were non-residents of this state, and resided at the place mentioned in the affidavit of Mr. Burnett. It is claimed on behalf of the purchaser, that Mr. Johnson's affidavit being entitled in a different suit, could not be used in this. In that, I think, he is mistaken. The Code requires that it shall appear "by affidavit to the satisfaction of the court or a judge" granting the order, that the person on whom the service of the summons is to be made, cannot, after due diligence, be found in this state, and I see no good reason why that may not be shown by an affidavit properly made, and forming a part of the records of the court, although not in the particular action in which the order is asked. That may, in many cases, afford more satisfactory evidence of the fact than any proof that could otherwise be obtained. It appears to be the practice in England to read affidavits in one suit that have been used in another, on certain applications (*see Langston* agt. *Wetherell*, 14 *Meeson & Welsby, p.* 104), and I am of opinion it is allowable on an application for orders of publication, and of a like nature. The objection to it appears to be a matter of form merely, and not of substance. I shall, therefore, hold that the affidavit of Mr. Johnson was properly before the court, and that it, with the facts stated positively by Mr. Burnett, authorized the order.

In so holding, I agree with the counsel of the purchaser, that the allegation made by Mr. Burnett, on information and

belief merely, is not evidence; but the absence of the defendants from the state is, as I understand his affidavit, positively stated by him, and that is a fact which affords at least some proof that they could not be served therein with the summons. In this case, being an action for the foreclosure of a mortgage, the non-residence of the defendants was not necessary to be shown. It was sufficient to establish the fact satisfactorily that they could not, after due diligence, be found within this state, so as to enable the plaintiff to effect the service of the summons on them, and that the case came (as it clearly did) within the fourth subdivision of section 135, which is distinct from the third subdivision having reference to non-residents of this state.

It is to be presumed from the fact of making the order, that the affidavits recited therein afforded satisfactory evidence to the court of those requisites, and the omission so to state in the order does not affect its validity.

I am, therefore of opinion, that the second ground of objection to the proceedings is not well founded.

3d. The third objection is based on the fact that a copy of the order appointing a guardian *ad litem nisi* of the non-resident infant defendant, was deposited in the post office two days before the order and the affidavits on which it was founded, were filed.

It appears, however, that the order was made on the day of the deposit, and the omission to file it until a subsequent day, does not invalidate the proceeding. According to our present practice, an order, and the affidavits on which it was founded, must in many cases be taken to a distant county, and it is often impossible to file them in the proper office on the same day the order is made. That however is effectual when filed, from the time it is granted.

The previous deposit is at most an irregularity that can be remedied at any time by filing the order *nunc pro tunc*. This, however, is not necessary. No guardian was ever appointed on the application of the infant, or of any relation on his behalf, and the original order *nisi* became effect-

ual. The original appointment of the guardian has moreover been confirmed by the court.

An answer was put in by him for the infant, and judgment has been entered. Under such a state of facts, the regularity of the appointment of the guardian cannot now be questioned. (*See Rogers* agt. *McLean,* 31 *How. Pr. Rep. p.* 279, *&c.*)

It follows that the last ground on which the purchaser asks relief, is not available for that purpose.

I am thus, after a full consideration, brought to the conclusion that the application of the purchaser must be denied.