BLACK (UNITED STATES v.). See Cases Nos. 14,600–14,602.

BLACK v. WELLS. See Case No. 1,463.

BLACK (YOUNG v.). See Case No. 18,153.

## Case No. 1,467.

### BLACKBURN v. SELMA, M. & M. R. CO.

[2 Flip. 525;[1] 12 Chi. Leg. News, 130.]

Circuit Court, W. D. Tennessee.    December 21, 1879.

CORPORATIONS — JURISDICTION OF THE FEDERAL COURTS—ESTOPPEL — FOREIGN CORPORATIONS—VOLUNTARY APPEARANCE — PLEADING — WHEN FOUND WITHIN THE DISTRICT—WHETHER STATUS HOME OR FOREIGN—COLLUSIVE SUIT — CONSOLIDATION OF CORPORATIONS — MORTGAGE — SUIT PENDING—SUBSEQUENT SUIT—RAILROADS—REAL ESTATE—SALARIES.

1. A corporation authorized by statute in Tennessee, doing business there and dealing, as if organized, by reciting in its bonds and mortgages that it has been chartered by that state, is estopped when sued in the federal courts to deny that it was duly organized under the laws of Tennessee.

2. A foreign corporation, by filing an answer waives the right to be sued only in the districts of the state creating it, and if the suit be in equity to enforce a lien or claim to property within the federal district where sued, the jurisdiction is not limited to the property situated within the district, but is plenary for all proper purposes after such voluntary appearance.

[See Decker v. New York B. & P. Co., Case No. 3,727; Cadle v. Tracy, Id. 2,279; Wilmer v. Atlantic & R. A. L. R. Co., Id. 17,776; Kelsey v. Pennsylvania R. Co., Id. 7,679.]

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

3. An averment in a bill that a defendant corporation is duly chartered under the laws of Tennessee can only be denied by a plea in abatement to the jurisdiction. A demurrer for want of equity or an answer is a voluntary appearance, although the demurrer may also seek to aver a want of jurisdiction.

4. A defendant corporation "is found" within a district where it is sued, whenever it does business there by authority of law; the law implies a condition that it shall be amenable to suit within the state, whether the effect of the legislation is to adopt the foreign corporation as one belonging to the state, or only to license it to do business within the state. An express condition that it shall consent to be suable is not necessary.

[Cited in Uphoff v. Chicago, St. L. & N. O. R. Co., 5 Fed. 546.]

[See Northern Indiana R. Co. v. Michigan C. R. Co., Case No. 10,321. Contra, Hatch v. Chicago, R. I. & P. R. Co., Id. 6,204; Railroad Co. v. Harris, 12 Wall. (79 U. S.) 65; Wilson Packing Co. v. Hunter, Case No. 17,852; Railroad Co. v. Koontz, 104 U. S. 10.]

5. It is always a question of legislative intent whether a foreign corporation is adopted as a home corporation or only licensed as a foreign corporation to do business within the state. When the foreign charter is duplicated, and the legislation assumes the form of creating a home corporation, and not the form of a license only, the intention is to adopt the foreign corporation as one of home construction; its effect is to consolidate the two, but for purposes of jurisdiction it is a separate corporation resident within the state of its adoption. In such a case separate organization is not necessary, the foreign organization having been adopted as one existing.

6. Where a plaintiff has otherwise a right to sue, it is no objection to the jurisdiction that he acquired the title in question for the purpose of enabling him to bring the suit. A person has the right to acquire property to enable him to sue in the federal courts concerning it. But if the transaction is not real, and only colorable, the title, in fact, remaining in the grantor, the jurisdiction is defeated by the statute.

7. Where corporations of three states are consolidated into one, a court of equity in foreclosing a consolidated mortgage upon the entire property, has jurisdiction to sell all the property in all the states. Separate suits are unnecessary.

[See Wilmer v. Atlantic & R. A. L. R. Co., Case No. 17,776; Muller v. Dows, 94 U. S. 444.]

8. Where by a bill to foreclose a consolidated mortgage a court in one state has acquired jurisdiction to sell property in three states wherein the consolidated company has mortgaged its property, subsequent proceedings to subject the property to other claims in one of the states cannot oust the first court of its jurisdiction to proceed. And a sale of part of the property by such subsequent proceedings cannot avoid a decree for sale in the first suit. Nor can the defendant corporation be heard to set up such subsequent proceedings as a defense to a decree of foreclosure.

9. A railroad corporation, when not restricted by its charter, may acquire lands, ad libitum, and where it executes a mortgage to secure bonds to be used to raise money for construction purposes, may buy lands with part of the bonds to be utilized by including them in the mortgage as additional security for all the bonds.

[See New York Dry-Dock Co. v. Hicks, Case No. 10,204.]

10. The salaries of the officers of the company are a necessary part of the expenses of construction of the road, and may be paid out of the construction fund, or with the bonds to be used to raise construction funds, unless restricted by the charter.

In equity. The [defendant] company authorized about four million dollars of bonds to be issued to raise money to build the road, and executed a mortgage upon all the property in the states of Alabama, Mississippi and Tennessee, including about forty-five miles of finished road in Alabama. The loan did not attract the money-lenders, and only $310,000 of the bonds were actually issued. Of these, Gen. N. B. Forrest received $102,000 in payment of his salary as president, and commissions for procuring subscriptions to the capital stock from counties, towns and private individuals, and for other services rendered the company. A large part of the other bonds were used to purchase of Jacob Thompson, A. M. Clayton, W. G. Ford and others about 250,000 acres of land in Mississippi, known as swamp lands, which were included in the mortgage that authorized their sale by the trustees. A small fund was also raised on the bonds, and used in the construction of the road. Some of the bonds being sold by Gen. Forrest to [complainant] Dr. Luke P. Blackburn, now the governor of Kentucky, that gentleman filed this bill to foreclose the mortgage. Judge Emmons appointed a receiver, and a deed was made to him, but he never got possession of the Alabama part of the road, because while the motion was pending, a creditor with a judgment for $75 filed a bill to sell the road, and it was put in the hands of a receiver by the state courts of Alabama, and subsequently sold. The corporation was never separately organized in Tennessee; the acts of the Tennessee legislature being merely duplicates of the Mississippi acts. The jurisdiction of the United States court was earnestly resisted because it was not a Tennessee corporation, although the principal office was kept in Memphis. The use of the bonds to buy lands and pay salaries was attacked as unauthorized and fraudulent.

Estes & Ellet and J. W. Hampton, for plaintiff.

Minor Meriwether, for defendant.

HAMMOND, District Judge. By certain acts of the legislature of the state of Alabama, commencing February 13, 1850, and on to the latest act of December 31, 1868, there was incorporated a railroad company, finally known as the Selma, Marion & Memphis Railroad Company; by certain acts of the legislature of the state of Mississippi, from November 23, 1859, to July 21, 1870, there was incorporated by that state a railroad company by the same name; and by certain acts of the legislature of Tennessee, from March 24, 1860, to February 15 and 27, 1869, there was incorporated in this state a

railroad company by enacting verbatim the Mississippi act of November 23, 1859. The persons incorporated were identically the same, both in Tennessee and Mississippi, and the object evidently was to authorize a consolidated corporation to promote the scheme of building a railroad from the city of Memphis across the state of Mississippi to its eastern boundary. Nothing seems to have been done in furtherance of this enterprise until after the war, when by subsequent legislation the original acts were revived and amended in both Mississippi and Tennessee with the evident purpose of creating, so far as could be done, one single corporation in both states. The corporators and stockholders met at Okalona, Miss., on the 9th of November, 1868, and organized the company. The stockholders and corporators resided in both Mississippi and Tennessee. Some of the Tennessee stockholders were delegates from the city of Memphis and Shelby county, Tennessee, and representatives of the chamber of commerce at Memphis. At that time the only Tennessee legislation was that of March 24, 1860, but shortly after, on the 15th February, 1869, the necessary legislation was procured reviving the act of March 24, 1860. There was never any separate organization in the state of Tennessee. The Mississippi and Tennessee legislation seems to be almost identical throughout, the plan being whenever Mississippi passed an act to have it duplicated in Tennessee. The board of directors and officers elected were largely composed of residents of Tennessee. It does not appear when the scheme of consolidating this Mississippi and Tennessee corporation with the Alabama corporation was first conceived, but it may be inferred from the 46th section of the Tennessee act of February 15, 1869, and from the fact that some of the officers of the Mississippi and Tennessee corporation were likewise officers in the Alabama corporation; that this consolidation was the one referred to and authorized by the Tennessee legislature by that act. At all events, it appears by the proof that as early as January 30, 1871, the board of directors of the Alabama corporation considered the matter of consolidation by adopting articles of consolidation, which were also adopted by the directory of the Mississippi and Tennessee company March 8, 1871; and by both directories submitted to a joint convention of the stockholders. The proceedings of this convention do not fully appear in the proof, owing, it is said, to the loss of the record of it; but it does fully appear by the testimony that it was held, and the consolidation authorized; that directors were elected for the consolidated company, and that said directors assumed control, and the bonds and mortgages in this case were issued, and recite on their face the fact of consolidation. The consolidated company appears as a defendant in this suit, and by its answer makes

defense. This puts the fact of consolidation beyond dispute, as it seems to us, at least, so far as the stockholders of the several companies, whether they be two or three, understood it. If in fact there was no consolidation, it must be because there was some inherent want of power, or some fatal irregularity, to be presently considered.

It is contended by the plaintiff, and no doubt correctly, that a corporation, contracting as such when sued on the contract is estopped to deny its corporate existence, or the regularity of its organization. Nor can it disprove the regularity and sufficiency of the original articles of association; nor thus repudiate its debts. Herm. Estop. § 542; Bigelow, Estop. 419, 420; Field, Corp. § 386; Abb. Dig. Corp. 328, 229, 367; Bank of U. S. v. Dandridge, 12 Wheat. [25 U. S.] 64; Zabriskie v. Cleveland, C. C. R. Co., 23 How. [64 U. S.] 381; Adams v. Memphis & L. R. Co., 2 Cold. 645; Dooley v. Cheshire Glass Co., 15 Gray, 494; Merrick v. Reynolds E. & G. Co., 101 Mass. 385; Priest v. Essex Hat Manuf'g Co., 115 Mass. 380. And see Chubb v. Upton, 95 U. S. 667. In one of the cases cited, it is said, that "in relation to the question of acceptance of a particular charter by an existing corporation or by corporators already in the exercise of corporate functions, the acts of the corporate officers are admissible evidence, from which the fact of acceptance may be inferred. It is not indispensable to show a written instrument or vote of acceptance, or the corporation books. It may be inferred from other facts, which demonstrate that it must have been accepted." Bank of U. S. v. Dandridge, 12 Wheat. [25 U. S.] 64, 71.

As we understand the argument of the learned counsel of the defendant, it is claimed that the question here is one of jurisdiction, and therefore this doctrine of estoppel does not apply; however, it may be in a case where the defense is non est factum or some other plea to the merits. The fact that there never has been any separate organization of a corporation in Tennessee is relied on as conclusive against the jurisdiction, it being argued that without such an organization and acceptance of the charter in Tennessee the charter is dead by non-acceptance and non-user and limitation. Ang. & A. Corp. § 81. It is said this failure to organize separately in Tennessee shows that the defendant corporation is not a citizen of the district in which the suit was brought, and therefore we have no jurisdiction. Rev. St. U. S. § 629.

We cannot see why this estoppel is not as conclusive to support the jurisdiction as to support the contract. If a body of citizens shall assume to act as a Tennessee corporation; keep its headquarters and principal officers here, as this did; execute bonds and mortgages, including property lying in Tennessee, and reciting and showing its Tennessee charter and legislation as part of its

authority to do those acts, we do not see why it is not estopped by them to deny its Tennessee citizenship as well when the jurisdiction of the court depends upon it as when the validity of the contract is called in question. In Louisville, C. & C. R. Co. v. Letsom, 2 How. [43 U. S.] 497, 559, it is said that, "when the corporation exercises its powers in the state which chartered it, that is its residence, and such an averment is sufficient to give the circuit court jurisdiction." And in this case, and the case of Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 314, 328, and subsequent cases, it is held that the members of a corporation are conclusively presumed to be citizens of the state creating it, and are estopped to defeat the jurisdiction by any averment denying it. Covington Drawbridge Co. v. Shepherd, 20 How. [61 U. S.] 227, 233; Muller v. Dows, 94 U. S. 444; Field, Corp. §§ 368–376. This shows that the doctrine of estoppel, and the presumption of a fact which may be contrary to the real fact itself can be relied on to support the jurisdiction of the court, as well as for any other purpose. We say, then, that when parties act as a corporation in Tennessee, and claiming to be a Tennessee corporation, deal as such, they are estopped to deny that the corporation is a Tennessee corporation when sued in the federal courts of that state, and they can no more aver their non-user or non-acceptance of the charter, under which they have assumed to act against the jurisdiction of the court in which the corporation is sued, than they can aver the fact against the contract itself. But the jurisdiction is supported as well on other grounds. By the act of the 28th of February, 1839 (Rev. St. § 737), which the cases just cited show to be applicable to corporations, this court can acquire jurisdiction over the corporation by its voluntary appearance, and has done so by the answer in this case. Jones v. Andrews, 10 Wall. [77 U. S.] 327; Gracie v. Palmer, 8 Wheat. [21 U. S.] 699. By the act of 1789 (Rev. St. § 629), the defendant must be a citizen of the state where the suit is brought, but these decisions show that where the constitutional requirement of being citizens of different states exists the plaintiff may sue the defendant in any district where he is found; that is, served with process, or where he voluntarily appears. In Jones v. Andrews, supra, a motion to dismiss was held to be such voluntary appearance as waived the right of the defendant to be sued in the district of his residence. It is not necessary to hold here that where the president or other officer of the corporation, on whom process may be served, is found and served in a district other than that of the state creating the corporation, such service will give jurisdiction. Where there is nothing but the presence of an officer of a non-resident corporation in the district to support jurisdiction it would not be acquired by

the service of process on him; but with or without the service of process, if a corporation of a state other than that of the plaintiff being made a party, does voluntarily appear, such appearance gives jurisdiction over the corporation where there are other parties resident within the district who are sued, as in this case. Grant, then, that this corporation is only an Alabama and Mississippi corporation, one or both, being a necessary party to this suit and voluntarily appearing, the jurisdiction over it is complete. It is true that the defendant demurred for want of jurisdiction, and the demurrer was decided against it by the late circuit judge, Emmons, and it seems to us properly, not only upon the merits but technically, upon the record. The bill avers that the defendant corporation was created by the laws of Tennessee, and that the plaintiff is a citizen of Kentucky. This was a sufficient averment and, on the record the jurisdiction sufficiently appeared. Lafayette Ins. Co. v. French, 18 How. [59 U. S.] 404; Covington Drawbridge Co. v. Shepherd, 20 How. [61 U. S.] 227. If the averments were false, the proper way to raise the question and the only way, it seems to us, was by plea in abatement traversing the fact and showing the truth. The learned counsel seeks to avoid this by relying on the rule, that the demurrer did not admit "averments of law nor averments of fact in the bill which are contrary to any fact, of which the court takes judicial notice;" for which he cites 1 Daniel, Ch. Pr. 546. This averment that the defendant corporation was a corporation chartered by the laws of Tennessee, was not an averment of a matter of law nor an averment contrary to any fact of which we take judicial notice. This very case illustrates that it is not; for, the fact relied upon to defeat the jurisdiction, is that charter granted "is dead by non-user and non-acceptance and limitation," to quote the language of the brief, and substantially the allegations of the answer. If we admit that we take judicial notice of the Tennessee statutes, creating a corporate body as in the case of Covington Drawbridge Co. v. Shepherd, 20 How. [61 U. S.] 227, 234, we find them in abundance chartering this corporation or one for the same object and same purpose with same name and same parties as the Mississippi and Alabama corporations. Acts March 14, 1860, p. 598; Feb. 15, 1869, p. 221; Feb. 27, 1869, p. 345; Dec. 12, 1871, p. 59; March, 1875, p. 48. The fact that no such corporation was ever organized and that the charter was not accepted is one aliunde all these statutes, and should have been pleaded in abatement, if relied on to defeat the jurisdiction. 2 Abb. Pr. 55; Conk. Pr. 355; De Sobry v. Nicholson, 3 Wall. [70 U. S.] 423; Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386; Sheppard v. Graves, 14 How. [55 U. S.] 506; Wickliffe v. Owings, 17 How. [58 U. S.] 47; Jones v. League, 18

How. [59 U. S.] 76; Philadelphia, W. & B. R. Co. v. Quigley, 21 How. [62 U. S.] 202, 214. The filing of an answer, and perhaps the demurrer itself waived it; the demurrer being for want of equity as well as to the jurisdiction. See Jones v. Andrews, supra. The reservation in the answer of the question of jurisdiction, does not avoid the effect of filing it as a waiver of jurisdiction and a voluntary appearance. When the want of jurisdiction appears by the bill, it may be raised by demurrer, otherwise, it must be by plea in abatement, averring the facts relied on. It cannot be taken by answer. It is not like the case of an entire want of jurisdiction of the person or subject matter, which may be taken advantage of at any time. Here the court can by voluntary appearance acquire jurisdiction; and here the record shows a case of jurisdiction on its face. We have considered this question as if it were properly presented on the final hearing; but it is by no means clear that the ruling heretofore made, on this demurrer, belongs to that class of interlocutory orders, which may be reviewed and set aside on the hearing. The decree overruling the demurrer, does not grant leave to rely on it at the hearing, or to take the objection by answer, and this would be, perhaps, the only method of avoiding the necessity of a plea in abatement, if it could be done at all.

Again, we may acquire jurisdiction under the act of June 1, 1872 (Rev. St. § 738), by reason of the property of this corporation situated within the district and conveyed by the mortgage; and, all that has been said by us on the subject of acquiring jurisdiction by voluntary appearance under the act of Feburary 28, 1839 (Rev. St. § 737), applies as well to this section. And it is obvious from the reading of the statute that this jurisdiction is not limited to the property within this district, as is claimed by counsel, in any case where there is a voluntary appearance. It is only where there is a decree "without appearance" that the jurisdiction is so limited. The act of March 3, 1875 (18 Stat. 470), for the first time in terms confers jurisdiction to the full extent of the judicial power conferred by the constitution; but it will be found that the courts had already by construction of the acts of 1789 and subsequent acts, extended the jurisdiction to the utmost limits mentioned in the last act upon the subject. It is not therefore necessary to consider the question, whether the act of 1875 can confer jurisdiction of a suit brought prior to the act itself and which was pending at its passage.

I fully concur with the opinion of the learned circuit judge of the seventh circuit in the case of Wilson Packing Co. v. Hunter [Case No. 17,852], that in the purview of these acts of congress a defendant corporation "is found" within this district whenever it does business here by authority of law, and that the license to carry on business implies an obligation to submit to the jurisdiction of the courts of the state in which the license is granted. The supreme court have held that such a condition may be attached to the license, and the federal courts acquire jurisdiction as well as the state courts. Ex parte Schollenberger, 96 U. S. 369. We have no general statute in Tennessee requiring foreign corporations doing business here to submit to the service of process, although there is such requirement as to foreign insurance companies. Code, § 1500. But the legislation of this state in reference to this company certainly authorizes it to own and operate its railroad within this state and within this federal district. It does own and, the proof shows, has graded its road either wholly or partly within the district. It kept its principal offices here, and acted in all respects as if it were a Tennessee corporation. Now, whether it was or not, cannot affect the question of our jurisdiction. It may be fairly inferred or implied from the legislation that the company was to be suable here in our courts, if the benefits conferred were accepted as they have been. It is not necessary that the law should especially provide that the company should agree to submit to the jurisdiction of the courts in this state. This is perhaps all that was intended to be decided in the case of Baltimore & O. R. Co. v. Harris, 12 Wall. [79 U. S.] 65, 81. An act of congress authorized process against foreign corporations to be served on an agent in the District of Columbia, but it did not attach any condition of this kind to the legislation granting the license, but it was implied from the legislation.

More than this, we hold that it was not necessary to have a separate organization in Tennessee in order to make this a Tennessee corporation. We doubt if such was ever the intention of the legislature; but whether it was or not, it was, in the progress of the legislation, manifestly changed into a purpose to adopt the Mississippi organization as a Tennessee corporation. When this is done no separate organization is necessary to give the company a residence in Tennessee, certainly none is necessary to make it suable here. In the case of Baltimore & O. R. Co. v. Harris, 12 Wall. [79 U. S.] 65, the legislation of Virginia and of the District of Columbia by congress was held only to license a Maryland corporation, and not to create a Virginia or District of Columbia corporation. Whether the particular legislation does the one or the other was said to be "always a question of legislative intent." Page 83. In the case of Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286, an Indiana corporation, licensed by Ohio, sued a citizen of Indiana in a federal court of Indiana, which was held to be inadmissible. In Chicago & N. W. R. Co. v. Whitton, 13 Wall. [80 U. S.] 270, it does not

clearly appear what the legislation of Illinois was, but it seems to have been taken for granted that it was of such a character as to make it an Illinois corporation. Yet a citizen of Illinois could sue it in the federal court of Wisconsin, because it was a citizen of that state, being also a Wisconsin corporation; and there could not be a corporation or citizen of any other state. Page 83.

In Muller v. Dows, 94 U. S. 444, the corporations were chartered separately in Missouri and Iowa and subsequently consolidated under the laws of both states; and it was held to be a separate corporation in each for the purposes of jurisdiction. In the case of Williams v. Missouri, K. & T. R. Co. [Case No. 17,728], the defendant was held to be a Kansas corporation, and that it was not by the Missouri legislation made a corporation of that state. The acts of the Missouri legislature are not shown by the report. From these cases and others it appears that it depends upon the intention of the legislature in Tennessee whether this corporation is a Tennessee corporation, or only the corporation of another state, licensed to operate within this state. In creating a Tennessee corporation, it might select as corporators citizens of the state or other states, or of both or any number of states, or it might incorporate the same citizens as were incorporated by the other states, and give the same powers, privileges, etc.; or it might only license the foreign corporation to do business here as a foreign corporation. We think on a careful reading of the whole legislation that it was intended to adopt the corporation of Mississippi as a Tennessee corporation, and that while no separate organization was required, yet for the purpose of jurisdiction, a separate corporation was, in fact, created with its status fixed as a Tennessee corporation; and for all purposes it was intended to consolidate them to the only extent which can be done under our system. Therefore, the averment of the bill that the defendant was a corporation, created by the laws of Tennessee, is strictly true. But in the face of that averment, if it appear otherwise by the pleadings, as it does here; if the defendant's counsel is correct in his construction of the legislation that the corporation is only a citizen of Mississippi or Alabama or both, the jurisdiction can still be supported, notwithstanding the defective averment, if we are correct in the positions we have assumed on that subject. Muller v. Dows, supra. The plaintiff, being a citizen of Kentucky, could sue in the federal courts of either state, and our jurisdiction is established. ♦

It is not necessary to consider what the effect of the consolidation is as to the entity of this corporation, whether it is a compact whole or composed of three or two parts, broken by state lines; because, as we have endeavored to show, in any view we can take of the facts, we have jurisdiction to foreclose this mortgage, so far as the parties to the suit are considered in their relation as citizens to each other.

Nor is it necessary to consider this question in reference to the property sought to be foreclosed by decree of sale. The case of Muller v. Dows, supra, settles the law to be that our decree, if given, may include the whole property in all three of the states where there has been a consolidation, as in this case. Copeland v. Memphis & C. R. Co. [Case No. 3,209].

The next point to be considered as to the jurisdiction is the allegation, made in the pleadings, that this suit is collusive. It is said Luke P. Blackburn is not the real owner of the bonds sued on by him, but that they were only transferred to him to give this court jurisdiction, and really belong to N. B. Forrest, or his estate; he having died pending the suit, and he being a citizen of Tennessee. There is no proof of this collusive arrangement. It may be that Forrest sold the bonds to Blackburn for the very purpose of enabling him to bring this suit, but that cannot defeat the jurisdiction. It is neither wrong to entertain such a motive nor to carry it out, and certainly not fraudulent. The act of March 3, 1875 (18 Stat. 472), does not avoid a suit because of such a motive. It refers only to simulated and unreal controversies; that is, controversies between citizens of the same state, falsely set up as being citizens of different states. Barney v. Baltimore City, 6 Wall. [73 U. S.] 280; Smith v. Kernochen, 7 How. [48 U. S.] 198; McDonald v. Smalley, 1 Pet. [26 U. S.] 620; Osborne v. Brooklyn City R. Co. [Case No. 10,597]; Newby v. Oregon Cent. R. Co. [Case No. 10,145]; Briggs v. French [Case No. 1,871]; Welles v. Newberry [Case No. 17,378]; Starling v. Hawkes [Case No. 13,311]. It can make no difference where the suit is brought, the law is, or should be, the same in all courts. But if it be different, the real parties to the controversy have a right to select the forum in which to sue. Of course, Blackburn cannot sue on bonds belonging to Forrest, whether it is treated as a question of jurisdiction collusively obtained, or a question of title of the plaintiff. The only fact relied on to sustain this allegation of want of title in the plaintiff, is that he gave Crab Orchard salt stock for the bonds, and it is said the stock was valueless. It does not appear to have been so in the minds of these parties; and it was a good consideration if they thought it valuable.

It is said, the charter did not authorize the purchase of Crab Orchard salt stock by its president. There is no proof that these bonds, sold to Blackburn, belonged to the company, as is assumed in the argument. It seems Forrest owned some of the bonds, and those he sold may have been his own, and in the absence of proof, will be taken to be so.

It appears, by the proof, that this corpora-

tion, before issuing these bonds, entered into a contract to purchase, with some of the bonds, certain large quantities of what are said to be "swamp lands" in the state of Mississippi; and some of the defendants, who are directors in the corporation, were vendors of the lands, and are now holders of the bonds. This transaction is said to be fraudulent and collusive, made for the purpose of working off worthless lands in return for valuable bonds secured by this mortgage. There is no proof of this whatever. There is not even a syllable of proof taken as to the value of the lands, and we are asked to base a finding that they are valueless on an inference that they are so from the fact that they are denominated "swamp lands" and have been forfeited for taxes, and that some of the directors were the owners of some of the lands. If this transaction were fraudulent, it could have been proven to be so; and we do not feel authorized to infer it without proof.

It is true the courts scrutinize very closely, and sometimes with suspicion, the dealings of the officers of a corporation with it. But still, fraud is never inferred from the mere suspicion itself. There must be proof of it, as in other cases.

It seems a fair inference, from the proof, that these lands were purchased and included in the mortgage with a view of thereby strengthening the security and as an auxiliary means of floating the whole issue of bonds on the market. The scheme failed, as many such do; but it is not fair to treat it as a fraud upon the stockholders because it did fail. Many other railroad enterprises failed about this time from general causes, and it may be this did also. Neither can the company refuse to pay these bonds, which it gave for the lands, because of the failure to float the entire loan in the money markets of the world. It took the risk of the transaction, and in the absence of any fraud the contract must be enforced. There is nothing in any of the charters, or acts of the several legislatures under which the company acted, restricting its powers or prohibiting this transaction. In the absence of such restriction, there is no doubt of the power of a railroad corporation to take and hold real estate; and one of the most useful methods of building railroads is by grants of lands, or subscriptions of them to the capital property, to be utilized by sale or mortgage, or otherwise, as the interests of the company may require. It is true the money raised by the bonds was required by the covenants of the mortgage to be used in the construction of the road, and the object of purchasing these lands may have been to so use them as to convert them into money for that purpose. It is to be observed that the mortgage itself includes these lands and provides for utilizing them. If this scheme had been successful, no one would say that the using of a comparatively few thousands of the bonds in buying lands, which added strength to the security given for the large loans provided to build the road, would have been spent in its construction. Of the $4,250,000 of bonds, only $184,000 were used in the purchase of these lands. The same may be said about the salaries of the officers. The company might pay its officers out of the construction fund as a necessary expense incurred in the construction. The salaries may have been large, perhaps were too large, but that is no defense against the bonds paid out for them. And, here it may be said that if the purpose was to attack this land transaction as fraudulent, and the payment of these salaries as fraudulent, there should have been filed an original or cross-bill for the purposes of rescission, specifically charging the facts constituting the fraud and presenting the issues directly for adjudication. General charges of this kind, in an answer against co-defendants and bondholders proving their claims in a foreclosure suit, will not do. The plaintiff here is not shown to have had anything to do with these matters. Some mode must be adopted of making the issue with each bondholder as he comes up, where the particular transaction under which he claims, is attacked as fraudulent. There is nothing in the proof to show that the plaintiff, Luke P. Blackburn, got a bond paid out for land or given for salaries. His may have been of those paid out for construction of the road. We cannot infer, because he got it of Forrest, that it was of those paid to him for his salary. We have been asked to embody into a judgment the suspicion of bad faith, entertained by those now representing the company, against those, who formerly represented it, without any direct proof on the subject and on the very general charges of fraud. We are asked to assume that "swamp lands" and "Crab Orchard Salts Stock" are valueless, without any testimony as to their real value; to assume that Blackburn's bonds are of those, alleged to be fraudulently issued, and so of the other allegations of fraud. Too much has been left to inference in the matter of proving these charges of fraud to enable a court to say that they are true. The land transaction seems to have been ratified, or attempted to be ratified, by special legislation which was designed to further the scheme. We think the powers of the company to mortgage its property included a power to mortgage its franchises. There is no restriction on the subject and much in the legislation, which indicates an intention to include a power to mortgage franchises as well as other property. The mortgage does include the franchises; and it is not for the company to now deny its power in this respect. The incidental power to hold real estate and to mortgage franchises, is adequate unless specially limited by legislation. Field, Corp. § 52; Planters' Bank v. Sharp, 6 How. [47 U. S.] 332; 2 Redf. R. R. 462; Wilson v. Gaines,

(Sup. Ct. Tenn.) 1 Memphis Law J. 171, 175.

The plaintiff seems to have purchased a bond of Forrest, but, in the absence of proof, we cannot say that it was of the tainted bonds, if any were tainted. It may be that his belonged to the $16,000 issued for construction purposes. In the absence of proof, we must assume that he was an innocent holder, and therefore it is not necessary to consider the question, whether taking a bond after a coupon is due charges him with notice. This question would only arise, if it were proved that his bond was of those that were issued for the lands or the salaries. The company cannot take advantage of the unauthorized use of the bonds by its agents in violation of their instructions to use them only in construction of the road without proof, showing that the holder had notice that they were so issued. Nothing must be left to inference in determining this question; but the facts constituting the notice must be proved.

By the answer and by an amendment to the answer, filed since the cause came on for hearing, certain proceedings in the state courts of Alabama are set up as a defense to the bill in this case. Technical objections to the consideration of the transcripts, filed as evidence, are made, and in strictness they should not be heard in evidence; but we have, nevertheless, looked carefully into the matter; considered the nature of the defense set up, and feel inclined to dispose of it rather on the merits than the exceptions taken to the irregular mode of its introduction in the record. All these proceedings were taken in the courts of Alabama subsequently to the filing of the bill in this case. It seems that one May had a judgment against the road, whether the Alabama corporation or the consolidated corporation does not appear—nor is it material—for the sum of $76.70, upon which he had a nulla bona return. He filed a bill in the state chancery court to marshal the assets of the company, and to satisfy his judgment and all proper claims against the company in favor of other creditors, in whose behalf as well as his own, he filed the bill. By this bill he attacked the bonds and mortgage sued on in this case; denied the legal existence of the consolidated company, and set up very much the same defense against them as is set up by the answer in this case. He also attacked by the bill the bonds of the Alabama corporation, indorsed by the state of Alabama, and which were claimed as a prior lien on the Alabama portion of the road which seems to be completed, equipped and in full operation for a distance of some forty-five miles. This lien in behalf of the state of Alabama seems to have been recognized by the mortgage sued on in the case in this court, but its validity is denied by this bill of May in the equity court of Perry county, Alabama. The bill prays for the appointment of a receiver for a sale of the road and

a general administration of the assets. At the very time of the filing of this bill, and on the very day, one Porter King, who is president of the defendant company, residing in Alabama, appeared by his answer; substantially admitted the equities for the appointment of a receiver; waived notice, and a receiver was immediately appointed and put in possession of the Alabama portion of the road. This was done pending a motion in the case now at bar for a receiver, who was subsequently appointed by the late Circuit Judge Emmons, and to whom the defendant company by his order conveyed all its property included in the mortgage.

It is manifest that this Alabama proceeding was taken to overreach the jurisdiction of this court and defeat the effect of the proceedings here. It also appears that one Luddington subsequently filed his bill in the chancery court of Alabama, claiming to own some of the bonds indorsed by the state of Alabama, and asking to be subrogated to the lien of the state of Alabama for the bonds he held. By an order of the court the receivership in the May bill was extended to the Luddington bill, and the cause went to a decree of sale, recognizing the validity of the lien in favor of the state of Alabama and subrogating the bondholders to the lien. The road in Alabama was sold under the decree, and Crenshaw and others became the purchasers August 12, 1878, and the sale was confirmed to them.

This decree and these proceedings are now set up in this court, not by the purchasers, who are not parties to this suit, but by the defendant company, as a defense against a foreclosure here.

It is manifest that the defendant cannot make such a defense. It has no interest in it, and cannot plead title outstanding in an adverse claimant as a defense to a suit upon other contracts it has made.

But aside from this, these proceedings in Alabama were all taken after the bill filed here and pending the litigation. If in the race of diligence to get possession of the property, by collusion of the defendant, or otherwise, creditors appealing to another jurisdiction, have been satisfied, the defendant company has no right to complain. Whether the proceedings, taken there, are binding on creditors, who had, before they were commenced, taken proceedings here to enforce their lien, is a question we are not called on to decide. It is certain that the jurisdiction of this court cannot be ousted by subsequent proceedings taken in another forum, and such subsequent proceedings are not an obstacle to a decree in the court which first acquires jurisdiction. The general rule is that the court, which first acquires jurisdiction, is the one to which all parties claiming an interest in the property, sought to be foreclosed, must resort to settle their conflicting claims. Whether there be circumstances which relieve the creditors proceeding in

Alabama from the effects of this rule; whether they might proceed there and acquire a title which is paramount to that claimed by the plaintiff in this suit, is not properly now before us; nor can we undertake, in the condition of this record and with only the parties now here, to determine who will have the better title—the Alabama purchasers or the purchasers under any decree made here. All we determine is that no subsequent proceedings in Alabama can interfere with the proceedings here. We do not understand that actual manual possession of the mortgaged property, by a receiver or otherwise, is necessary to give a court of equity jurisdiction to foreclose the mortgage. A receiver has been appointed here, and a deed has been made conveying the property to him. Whether he ever took possession or not is immaterial; nor do we deem it material whether he got paramount title by the deed. The jurisdiction over the corporation has been acquired, jurisdiction over the trustees in the mortgage has been acquired, and we have jurisdiction to foreclose by sale all the property, included in the mortgage, to satisfy the claims of all creditors coming into this suit. Certainly, the defendant company cannot defeat the right to a foreclosure by alleging that some one else may be injured by the sale we make, casting a cloud upon his title.

Let there be a decree in the usual form to foreclose the mortgage.