# THE PREROGATIVE COURT

OF THE

## STATE OF NEW JERSEY.

### OCTOBER TERM, 1867.

---

ABRAHAM O. ZABRISKIE, ESQ., ORDINARY.

---

IN THE MATTER OF THE PROBATE OF THE WILL OF
GERTRUDE RICE McELWAINE, deceased.

1. Under the act of 1851 (*Nix. Dig.* 917), there are four requisites to a valid will. 1. That it be in writing. 2. That it be signed by the testator. 3. That such signature shall be *made by the testator*, or the *making thereof* acknowledged by him in the presence of two witnesses. 4. That it shall be declared to be his last will in the presence of these witnesses.

2. It is not sufficient that the signature be made by another, though at the request, and in the presence of the testator.

3. Where there is no proof as to the making of the signature, such acknowledgment is sufficient evidence that the testator made it, and would prove compliance with the requisite of signing by him. *Aliter*, when it is clear that he did not sign the will.

---

The testatrix was a married woman, and in the absence, and without the knowledge or assent of her husband, in August,

499

1865, made a will disposing of her real and personal property, and appointing her brother, E. P. Suydam, executor. She had been married but a short time, and had had no child.

Her husband, Thomas McElwaine, filed a caveat against the will.

She had dictated the will to Albertus Vandewater, who drew it; when drawn, he read it to her and asked her if that was her will; she answered, yes. He then asked her who she would have to witness it. She asked Vandewater and Cornelia Magee, two persons present who did witness it, if they would witness it. Vandewater then read it to her again, and asked her to sign her name. She took the paper and a pen in her hand, and said she could not, and asked Vandewater to sign her name for her. He did so in her presence, and brought the paper to her, and putting his finger on the name, asked her if that was her name and seal, and she said, yes. These two witnesses were present at the whole of the transaction, as stated, and signed their names as witnesses, in the presence of the testatrix. She did not, after her name was signed, touch the paper, or say that it was her signature, and there is no proof that, after her name was signed, she acknowledged or declared that it was her will.

The Orphans Court of Monmouth county, being of opinion that the will was valid to pass her real estate, in which her husband had no interest, but that it was void as to the personal estate, which went to the husband, admitted the will to probate, and granted letters of administration with the will annexed, to the husband, and refused letters testamentary to the executor.

The husband appealed from the part of the decree admitting the will to probate, and the executor from that part refusing letters testamentary, and granting administration.

*Mr. J. Parker*, for the executor.

*Mr. W. H. Vredenburgh*, for Holmes McElwaine.

In the matter of Gertrude Rice McElwaine.

THE ORDINARY.

The statute of 1851, concerning wills, which must govern this case, directs that "all wills and testaments shall be in writing, and shall be signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in presence of two witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator."

Four things are required: First, that the will shall be in writing; secondly, that it shall be signed by the testator; thirdly, that such signature shall be *made by the testator*, or the *making thereof* acknowledged by him in the presence of two witnesses; fourthly, that it shall be declared to be his last will in the presence of these witnesses. Each and every one of these requisites must exist. They are not in the alternative. The third requisite contains an alternative, but one of these alternatives must exist. The second requisite, the signing by the testator, must exist. The second alternative of the third, to wit, that he acknowledge "making of the signature," will not supply the want of the second. Where there is no proof as to the making of the signature, such acknowledgment is sufficient evidence that he made it, and would prove compliance with the requisite of signing by him. But when it is clear that the testator did not sign the will, this acknowledgment is not sufficient. The words of the act are clear; and the object is equally clear, and requires this construction to the words.

The act of March seventeenth, 1713–14, which was in force until 1850, by its second section, (*Nix. Dig.* 919, § 37,*) required all wills to be in writing, signed and published by the testator in the presence of three subscribing witnesses. Under that, it was held in *Compton* v. *Mitton*, 7 *Halst. R.* 74, that acknowledgment of the signing in the presence of the witnesses was not sufficient; the actual signing must be in their presence.

---

* *Rev.*, p. 1250, sec. 35.

The actual signing in this case, which was done by Vande-water, was done in her presence. The only question is, whether this is a signing by her.

In general, the maxim *qui facit per alium, facit per se* governs, and makes a signing by an agent a signing by the principal. But this act says the signature shall be *made* by the testator, or the making thereof acknowledged by him; it does not speak of acknowledging or adopting the signature, but of the making thereof. The fifth section of the statute of frauds, (29 *Car. II, ch.* 3,) which was in force in this state until the act of 1713–14, required that wills should be signed by the testator, " or by some other person in his presence, and by his express direction." The statute of this state, of 1713–14, and also that of 1851, in declaring the manner in which wills should be executed, have omitted these words, and must be held to have had an object in the omission. Again, the statute of 1 *Vict.* 26, *ch.* 9, from which our statute of 1851 is mainly taken, contains the same provision as the statute of frauds, " or by some other person, in his presence, and by his direction." The English statute of frauds, in which this language was first used, in other parts of it, carefully provides for the signing by an agent " lawfully authorized;" and in one section, by an agent " lawfully authorized by writing." That language has been adopted in this state, in all the re-enactments of those provisions of the statute of frauds; while in every statute relating to wills, the provision that wills may be signed by some one for the testator, was omitted. In the construction of the New York statutes, which in like manner omitted this provision, their courts held, that the omission in the principal section would have made the inference legitimate and unavoidable, that they intended to alter the law, and disallow such subscription or signature in the presence and by the direction of the testator, had not another section of the same act provided for the manner in which another person might sign the testator's name to the will, by his direction. *Robins* v. *Coryell*, 27 *Barb.* 559 ; *Chaffee* v. *Baptist Missionary Con*, 10

*Paige* 91 and 92.   The words of the act of 1851, and also of the act of 1850, are stronger than those of the statutes 29 *Car. II*, or 1 *Vict.*, in England; they are, " the signature shall *be made* by the testator, or *the making* thereof acknowledged by the testator." While thus providing more carefully for the execution of a will, it must be supposed that they intended, by omitting the words in the English acts, to require, in all cases, some actual signature by the testator himself, and not to allow his name to be signed by any one, without the safeguards required of its being done by some person, *in his presence*, and by his *express direction*.   Otherwise, a will written and signed for a testator, without his knowledge, or a substituted copy of one, already signed with a good imitation of his hand, might be shown him, and if he acknowledged the signature before two witnesses, and declared it to be his will, it would be executed according to the statute.   The signing required by this statute must be held to be some *signature*, making some mark or *signum* upon the paper so as to identify and give efficacy to it by *some act*, and not by words merely.

This seems to be the meaning given to the word *sign*, in the English statute of frauds and other like statutes, in the cases where the question arose whether making a mark with the hand guided by another, was held a sufficient signing. *Wilson* v. *Beddard*, 12 *Sim.* 28 ; *Stevens* v. *Vancleve*, 4 *Wash. C. C. R.* 269 ; *Meehan* v. *Rourke*, 2 *Brad. Rep.* 393.

In *Stevens* v. *Vancleve*, Justice Washington holds, that the will which was executed by writing his name, his hand being guided by another at his express request, was executed in strict conformity with the English statute of frauds, which he assumed, perhaps wrongly, was in force in this state. There would have been no occasion to resort to this reasoning or assumption, if the signing required by the statute of this state, or the English statute of frauds, could as well be done by another for him, as by the testator himself.   If signing by the testator included signing by another, the addition in the English statute is superfluous; and if intended only

to regulate the signing by another, it would have been added in another form.

Sir Herbert Jenner Fust, in *Gaze* v. *Gaze*, 3 *Curteis* 451, held that the Wills Act of *Vict.* 1 requires that it should *appear* that the signature was made by the testator himself, when it was not made by some person in his presence or by his direction; that the mere acknowledgment of the will is not sufficient. He did not require further evidence of the testator's handwriting, because the signature and the body of the will were evidently in the same handwriting. The will was an olograph will, and the body of the will was admitted by the answers to be in the handwriting of the testator; and he held this sufficient proof of the signature.

I have no doubt that this paper was intended by the testatrix as her will, and that but for the statute, it ought to have effect given to it so far as she had legal power to make a will. But if one safeguard provided by statute is dispensed with, another may be, and if I do so in this case, where the construction is clear, I may as well dispense with the requirement of writing, or of two witnesses. The danger is of frittering away the statute to avoid its effect when it works injustice.

I am of opinion that this will was not signed by the testatrix as required by law, and cannot, therefore, be admitted to probate. The decree of the Orphans Court must be reversed, and the testatrix declared to have died intestate, and that her husband is entitled to administer her personal property.