This is an appeal from the decree of the orphans court of Camden county affirming an order of the surrogate of that county denying probate of the alleged last will of Linda H. Amsden, deceased. The will is formal, is written entirely in the handwriting of Linda H. Amsden, the testatrix, and concludes as follows:
 "Given under my hand this 12th day of May 1910. LINDA H. AMSDEN (L.S.)
We certify that Linda H. Amsden signed the above in our presence. ARLINE R. MANSFIELD JENNIE A. JOHNSTON."
The will is attacked on the ground that it is not executed in accordance with the statutory requirements. The formalities required by the act concerning wills, as stated by the court of errors and appeals are:
"First, that the will shall be in writing; second, that it be signed by the testator; third, that the signature of the testator shall either be made or acknowledged by him in the presence of two witnesses who shall be present at the same time; fourth, that the writing shall be declared by the testator to be his last will, in the presence of those witnesses, present at the same time as aforesaid; and fifth, that the two witnesses shall subscribe their names thereto in the presence of the testator." See In re McElwaine's Will, 18 N.J. Eq. 499; Bioren v. Nesler,77 N.J. Eq. 560; 78 Atl. Rep. 201; In re Halton, 111 N.J. Eq. 143; 161 Atl. Rep. 801.
The attestation clause is defective but does state the performance of some of the requisites. When an attestation clause states the performance of some of the requisite acts, *Page 557 
but omits to state the performance of other acts, also requisite, on reason and authority, the proponent must establish by evidence the performance of the latter acts. Ayres v. Ayres, 43 N.J. Eq. 565; 12 Atl. Rep. 621; In re Johnson, 115 N.J. Eq. 249;171 Atl. Rep. 307.
Because of the failure to take stenographically the testimony produced before the orphans court, the hearing in this cause wasde novo, witnesses were heard and the alleged will was offered in evidence; the will is written on a double sheet of foolscap paper, folded on the side, and occupies about two and one-third pages; an inspection of the will indicates that the date, "12th" of May, the signatures of Miss Amsden and the two witnesses have been written with the same pen and ink. The will on its face bears every evidence of authenticity and I am convinced that it expresses the testamentary intention of the decedent and is entitled to probate if the proofs submitted to sustain its due execution are sufficient.
One of the witnesses, Arline R. Mansfield, predeceased the testatrix, and the other witness, Jennie A. Johnston, while produced to testify, was unable to recollect the circumstances surrounding the execution of the will except to identify the signature of the testatrix and her own signature. Her memory as to any other matters which took place at the time the will is alleged to have been executed was a blank. She was ill when she testified and frankly stated that she was unable to recall those matters which transpired so many years back, so that her testimony is of no benefit other than to identify those signatures, and to all intents and purposes the effect so far as proof is concerned is the same as if she were deceased.
In order to supply the proof requisite to establish the proper execution of this will, proponents produced witnesses who were present at the time the will is alleged to have been executed but who are not subscribing witnesses. Objection was made to the taking of the testimony of these witnesses relating to the acts and circumstances existing at the time the will is alleged to have been executed, but in view of the fact that one of the subscribing witnesses is dead and the other subscribing witness is unable to remember what took place, it seems to me that other witnesses who were present *Page 558 
at that time are competent to testify, in the absence of any statute which would disqualify them. Counsel have not been able to cite any New Jersey case which is in point, but it seems to me that such testimony should be admitted.
Except in a few jurisdictions wherein, by virtue of statute, only the testimony of the attesting witnesses can be heard in proof of the due execution of the will in a proceeding to probate, the evidence which may be received is not confined to the testimony, affidavits, or depositions of the attesting witnesses; it extends to and embraces any competent proof which has a material tendency to render it probable or improbable that the testamentary instrument in question is valid and genuine and was legally executed, at least where, by reason of death, absence, or other cause, the attesting witnesses or their testimony cannot be produced, their recollection of the necessary facts is faulty, they refuse to testify, or they testify that the will was not duly executed. 68 C.J. 1000.
At the time the will was executed, Gladys C. Randall, a niece of the testatrix, lived with her mother, Mrs. Starkweather, at 3405-07 Federal street, Camden, New Jersey, which was a dwelling and store. The testatrix had resided in this home since about 1905 and continued to reside there up until the time of her death on June 17th, 1934. When the will was made in May, 1910, Mrs. Randall was a young girl between fourteen and fifteen years of age and a student in the eighth grade at school; she testified that she was present on the day the will was executed and that there were also present in the dining room the two subscribing witnesses, Mrs. Arline R. Mansfield and Jennie A. Johnston, Mrs. Frances B. Starkweather, sister of the testatrix and mother of Mrs. Randall, and Miss Amsden, the testatrix. Her description of the occurrence in her direct testimony is:
"I came home from school at lunch time for my lunch, and I entered the home through this door and that enters out into the dining room adjacent to the kitchen, and my aunt sat with her side towards this door, at the end of the dining room table, with this paper in her hand, and Miss Johnston stood at the side of the table facing her talking to her, and I looked and went into the kitchen, as my mother was preparing my *Page 559 
dinner, and asked her what my aunt was doing * * *," and the witness further testified that Miss Amsden remained in the dining room seated at the table all the time. The witness returned to the dining room; and her narrative continues: "I was watching and Miss Johnston seemed reluctant to do whatever my aunt was asking her to do, and somebody entered this door, and mother came from the kitchen and I looked in this door and didn't see what Miss Johnston did, and she said, `it is Mrs. Mansfield, she will sign it for you' * * * Mrs. Starkweather [witness' mother] said it to my aunt, and Mrs. Mansfield walked through this door into the dining room and said, `what is it you want me to do?' and my aunt said she was making out her will and would like to have her witness it, and she said she would be very glad to do so, and walked to the table immediately and signed it, and then I went into the kitchen to get my lunch."
The witness also testified that during all that time Miss Johnston was present. She further testified that she did not see the testatrix sign the will, nor see Miss Johnston, the other subscribing witness, sign it.
Upon cross-examination with respect to what testatrix said at the time her will was witnessed by Mrs. Mansfield, the witness testified that her aunt, testatrix, said to Mrs. Mansfield that "she was making out her will and was trying to get witnesses, and she asked her would she witness it, and she said, `I would be very glad to do so.'"
The events to which Mrs. Randall testified took place twenty-four years before the death of the testatrix and twenty-five years before she was called upon to testify in this matter. She was a young girl not conversant with the legal requirements for the execution of a will, and although she had some interest as a legatee I am confident that she was telling all that she could recollect in connection with the matter, and her testimony should be accepted for whatever probative force it may have.
Mrs. Starkweather, sister of the testatrix, also testified, but her testimony was confined to recognizing the signatures of testatrix and the witnesses and her remembrance of calling Mrs. Mansfield to act as a witness. Her memory as to the *Page 560 
things which took place was rather meagre and was of very little assistance on the questions raised herein. The remaining witness was Mr. Starkweather, who merely testified to taking the will out of a safe deposit box where it had been placed.
It has been argued on the part of the proponent that, conceding the genuineness of the signatures of testatrix and the two witnesses, the attestation clause proves that the alleged will was signed by the decedent in the presence of the witnesses, both present at the same time, and that the decedent signed first, and that the attestation clause leaves to be proven by proofaliunde only the facts that the decedent published her will in the presence of two witnesses, present at the same time, and that the witnesses signed in the presence of the decedent. In the case, In re Kirkpatrick, 22 N.J. Eq. 463, in the prerogative court, the ordinary, Chancellor Zabriskie, held that although the attestation clause did not recite that the witnesses were both present at the same time at the signing, yet there being but one signature of the testatrix, the attested fact that both saw her sign shows the presence of both at the same time. The contention of the proponent as to the force of the attestation clause in that respect seems to be well founded unless the testimony of Mrs. Randall should overcome it. I have tried to reconcile Mrs. Randall's testimony with the probative effect argued in behalf of the attestation clause, but her testimony rather negatives the fact that the testatrix signed in the presence of both of the subscribing witnesses, Mrs. Mansfield and Miss Johnston. The testatrix and Miss Johnston appear to have been having a discussion with reference to the signing of the will at the time Mrs. Mansfield arrived on the scene, and Mrs. Randall's testimony indicates that as between the two witnesses Mrs. Mansfield signed first; it also leads me to believe that testatrix had signed the will and was endeavoring to get Miss Johnston to witness it when Mrs. Mansfield came in and signed as a witness, and that afterward Miss Johnston also signed. In the absence of such testimony on the part of Mrs. Randall I would be inclined to concede that the statutory requirements regarding the order of signing had been *Page 561 
complied with, but I cannot escape the conclusion that testatrix had signed before the witness Mrs. Mansfield came into the room and that there was no acknowledgment on the part of testatrix of her signature. While the statement of testatrix that she was making out her will and would like to have Mrs. Mansfield witness it, made in the presence of both Mrs. Mansfield and Miss Johnston, might be held to be a sufficient publication, yet that statement is open to some question as being a sufficient acknowledgment of her signature.
There is absolutely nothing in the testimony from which I can find that the subscribing witness, Miss Johnston, signed in the presence of testatrix. It could only be inferred, if at all, from the fact that Miss Johnston was in the room with testatrix and Mrs. Mansfield after Mrs. Randall left the room, that Miss Johnston signed it then as a witness in the presence of testatrix. It is not necessary, of course, to show that both of the witnesses were present with the testatrix at the same time when they subscribed their names as witnesses, but it is necessary to show that they both did sign in the presence of testatrix, and the proof fails in that particular so far as Miss Johnston is concerned.
I have endeavored to find in the proofs, sufficient facts to justify the admission of this will to probate, but it seems to me that at least two of the statutory requirements have not been met; I entertain very considerable doubt that the testatrix signed or acknowledged her signature to the will in the presence of both of these two witnesses, and also that one of the witnesses, Miss Johnston, signed in the presence of testatrix.
The proponent argues with very persuasive force that the doubts which have been suggested concerning the proper execution of this will are dissipated by force of the maxim, "omnia praesumunturrite et solemniter esse acta donec probetur in contrarium,"
citing In re Halton, supra, in which that maxim, but slightly altered in language, is referred to (at p. 161). It must be recalled, however, that in the latter case the court had before it a will without an attestation clause, and the testimony of the two witnesses to the same; one witness testified that the statutory requirements for the *Page 562 
due execution of wills were observed, the other witness testified to the contrary, but whose testimony was measureably discredited by other circumstances. In the instant case we are denied the aid of a proper, complete, attestation clause, and are also denied the aid of the testimony of the attesting witnesses to the will, whereas the only witness produced whose testimony relates to the vital matters under consideration tends to increase rather than to lessen the perplexities of the case. In these circumstances, is a court entitled to lay hold of a legal maxim to, in the first place, supply a void created by an incomplete clause, and, in the second place, to overcome the very serious doubt created by the only testimony in the case on a material issue? I do not think so. In the Halton Case, the maxim was called upon merely to support an attesting witness; here it is called upon to stand alone, nay more, to prevail over the proofs.
The decree of the orphans court denying probate, will be sustained. *Page 563